# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Abiomed Inc.,

    Plaintiff/Counterclaim Defendant,

vs.

MAQUET Cardiovascular LLC,

    Defendant/Counterclaim Plaintiff,

vs.

Abiomed Europe GmbH and Abiomed R&D, Inc.,

    Counterclaim Defendants.

C.A. NO. 1:16-CV-10914-FDS

JURY DEMAND

## MAQUET'S MEMORANDUM OF LAW IN OPPOSITION TO ABIOMED'S MOTION TO COMPEL PRODUCTION OF PATENT TRANSACTION, ASSESSMENT, VALUATION, AND LICENSING DOCUMENTS

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND .................................................................................................. 2

      A.    Maquet/Getinge Relationship .................................................................. 2

      B.    Abiomed's Prior Discovery Demands & Pleadings Targeting Getinge ........... 3

      C.    Maquet's Proportional Document Productions ........................................ 6

      D.    Abiomed's Instant Motion to Compel ...................................................... 8

III.  THE REQUESTED DOCUMENTS ARE BEYOND THE SCOPE OF RULE
      26(b) ................................................................................................................... 10

      A.    Rule 26(a) Legal Standards .................................................................... 10

      B.    Rule 26(a) Arguments ............................................................................ 11

IV.   THE REQUESTED DOCUMENTS ARE BEYOND THE SCOPE OF RULE
      34(a) ................................................................................................................... 13

      A.    Rule 34(a) Legal Standards .................................................................... 13

      B.    Rule 34(a) Arguments ............................................................................ 14

            1.    Maquet Does Not Have "Control" Over Getinge's Documents .......... 14

            2.    Maquet's Concession to Provide Limited Documents from
                  Getinge Does Not "Open the Door" to Unfettered Discovery
                  from Getinge ................................................................................ 17

            3.    Abiomed's Case Law Regarding "Control" Is Inapposite ................. 19

V.    CONCLUSION ................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Addamax Corp. v. Open Software Found., Inc.*,
148 F.R.D. 462 (D. Mass. 1993)..................................................................14, 19, 20

*Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*,
201 F.R.D. 33 (D. Mass. 2001)................................................................................13

*Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*,
138 F.R.D. 438 (D.N.J. 1991)..................................................................................20

*Cooper Industries, Inc. v. British Aerospace, Inc.*,
102 F.R.D. 918 (S.D.N.Y. 1984) .............................................................................20

*FM Generator, Inc. v. MTU Onsite Energy Corp.*,
No. 14-cv-14354-DJC, 2016 WL 8902603 (D. Mass. Aug. 25, 2016)..............13, 14, 16, 17

*Gerling Intern. Ins. Co. v. C.I.R.*,
839 F.2d 131 (3d Cir. 1988).....................................................................................19

*Heraus Electro-Nite Co. v. Midwest Instrument Co., Inc.*,
No. 06-355, 2006 WL 3004877 (E.D. Pa. Oct. 18, 2006) ......................................17

*Johansen v. Liberty Mut. Group, Inc.*,
15-CV-12920-ADB, 2017 WL 6045419 (D. Mass. Dec. 6, 2017)..........................11

*Maquet Cardiovascular LLC v. Abiomed Inc. et al.*,
No. 17-cv-12311-FDS.........................................................................................1, 18

*Pennwalt Corp. v. Plough, Inc.*,
85 F.R.D. 257 (D.D.C. 1979)...................................................................................19

*Pitney Bowes, Inc. v. Kern Intern., Inc.*,
239 F.R.D. 62 (D. Conn. 2006)...........................................................................14, 17

*Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.*,
316 F.R.D. 89 (D. Del. 2016) ..................................................................................17

*Searock v. Stripling*,
736 F.2d 650 (11 Cir., 1984)...................................................................................13

*Uniden Am. Corp. v. Ericsson Inc.*,
181 F.R.D. 302 (M.D.N.C. 1998) ............................................................................14

**RULES**

Federal Rule of Civil Procedure 26 ...................................................................... *passim*

Federal Rule of Civil Procedure 34 ...................................................................... *passim*

Local Rule 37.1(b)(4)...............................................................................................4

## I.   INTRODUCTION

Maquet Cardiovascular LLC ("Maquet") alone owns the patents-in-suit, and contacted Abiomed Inc. ("Abiomed") in December 2015 to discuss a potential license thereto. Rather than engage in licensing negotiations, Abiomed filed the instant declaratory judgment suit against Maquet ("*Maquet I*") in May 2016. Over a year later, Abiomed moved to join Getinge AB ("Getinge") as a defendant, asserting an untenable theory that Getinge "exercised substantial rights in the patents-in-suit." (D.I. 96 at 1). This Court denied Abiomed's motion. (D.I. 161). Shortly thereafter, in *Maquet Cardiovascular LLC v. Abiomed Inc. et al.*, No. 17-cv-12311-FDS ("*Maquet II*" or "*Maq. II*")—which was necessitated by Abiomed's opposition to Maquet's attempt to add a related patent in *Maquet I*—Abiomed served a third-party declaratory judgment complaint on Getinge, premised on the ***identical*** untenable allegation that Getinge "exercises substantial rights" in the patent-in-suit. (*Maq. II*, D.I. 14 at ¶ 27). Getinge moved to dismiss the third-party complaint, and this Court granted that motion, rejecting—***for the second time***—Abiomed's improper attempt to embroil Getinge in the patent dispute between Abiomed and Maquet.

Having twice failed, Abiomed now takes a third bite at the apple, seeking "an order compelling [Maquet] to produce patent transaction, assessment, valuation, and licensing documents" from its non-party ultimate parent, Getinge. (D.I. 245 at 1). Abiomed fails to inform the Court that Maquet has already searched for and produced such documents. Maquet has produced all transaction records through which it acquired the patents-in-suit, the ███████████ ████████████, and licensing negotiations relating to the patents-in-suit (which Abiomed has characterized as patent "assessments" and "valuations" (*see* D.I. 207)).

Thus, contrary to the title of its motion, what Abiomed actually seeks is a burdensome, costly, ill-founded fishing expedition into the foreign documents of non-party Getinge, the ultimate corporate parent of a number of companies with which Abiomed directly competes in the medical

1

device market. Abiomed's suppositions that Getinge possesses a relevant collection of non-duplicative, non-cumulative documents, that discovery of such documents is proportional to the needs of the case, and that Maquet has control over such documents, have no basis in fact or law. Just as Abiomed's allegations of Getinge's "substantial rights" served as the pretext for Abiomed's unsuccessful attempts to join Getinge in *Maquet I* and *Maquet II* and fish into its corporate records, Abiomed's allegations underlying the instant motion now serve as the pretext for its renewed application for a license to fish where it has already ***twice*** been turned away.

In opposing Abiomed's prior pleadings and discovery demands, Maquet and Getinge have already shone a light on Abiomed's improper motives. The same motives are at play here. Abiomed has known about Getinge since at least the start of this matter but has made no attempt to pursue discovery under the Hague Convention. Abiomed has not explained, and cannot explain, what has prevented it from pursuing such discovery through the proper channels.

## II.   BACKGROUND

### A.   Maquet/Getinge Relationship[1]

Getinge is a Swedish company with its principal place of business in Sweden. (*Maq. II*, D.I. 46 at ¶ 5). It is the head of a multinational conglomerate of companies with the primary focus of providing products and solutions in the healthcare and life science industries. (*Id.*). These conglomerated companies at times refers to themselves as part of the "Getinge Group." (*Maq. II*, D.I. 25 at ¶ 4). Getinge does not design, manufacture, market, sell, or distribute any products within the United States, and it is not registered to do business in any of the states or territories of the

---

[1] The facts in this section are drawn largely from Getinge's memorandum of law in support of its granted motion to dismiss Abiomed's third-party complaint in *Maquet II* (*Maq. II*, D.I. 44), and the Declaration of Pater Hjalmarsson filed therewith (*Maq. II*, D.I. 46).

United States. (*Maq. II*, D.I. 46 at ¶¶ 17–18). It does not own, operate, or maintain any facilities, offices, or places of business in the United States, nor does it maintain any registered agents for service of process in the U.S. (*Id.* at ¶¶ 15 & 17). It also does not pay any federal or state income taxes in the United States. (*Id.* at ¶ 12).

Maquet is a medical device company having its principal place of business in New Jersey. Maquet is a wholly-owned subsidiary of another Getinge subsidiary, Datascope Corp. (*Id.* at ¶ 6). Certain departments, such as the "Legal Shared Services" department, at times perform services on behalf of or in support of Maquet and other Getinge affiliated entities. (*Id.* at ¶ 9). Nonetheless, Maquet's officers and management are separate and distinct from the officers and management of Getinge. (*Id.* at ¶¶ 8–9). Maquet has provided written responses to Abiomed's interrogatories explaining that Maquet's employees and officers do not have employment agreements with Getinge and do not receive their compensation from Getinge. (*See Maq. II*, D.I. 45-4 at 5–8).

Discovery in *Maquet I* has further established that:



(Declaration of Wade G. Perrin ("Perrin Decl.") filed herewith, Ex. A at 17:10–20, 26:14–19);

(*id.* at 51:4–22);

(*id.* at 43:21–46:7, 78:17–79:1); and

(81:20–82:2).

## B.   Abiomed's Prior Discovery Demands & Pleadings Targeting Getinge

Since the outset of discovery in this suit (which Abiomed instituted against Maquet), Abiomed has waged a burdensome, costly, distracting campaign directed to obtaining discovery of irrelevant, not proportional, and likely non-existent documents purportedly in the possession of

Getinge. This motive is evident even from Abiomed's first set of requests for production served in February 2017, which Abiomed conspicuously omitted from its opening brief, despite its instant motion being directed at those very requests.[2] Abiomed likely withheld this document to conceal the incredible overbreadth of its definition of the term "Maquet," copied below:

> As used herein, the terms "Maquet," "you", "your," and "Defendant" refer to Maquet, the defendant in this action, and include (a) Walid N. Aboul-Hosn, William R. Kanz, Bruce Baker, and any other inventors of the invention or inventions purportedly disclosed by the Patents-in-Suit, as defined below; (b) any and all of Maquet's subsidiaries, divisions, departments, and other organizational or operating units; (c) all predecessor or successor companies or corporations; (d) all assigns of any of the foregoing entities; (e) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control, in any manner, with Defendant; (f) each of the present and former officers, directors, managers, employees, agents, consultants, attorneys, and accountants who are subject to Defendant's actual or constructive control, and any other representatives of any of the foregoing entities; (g) any company or entity that has invested in or otherwise provided funds to Defendant, other than as payment for goods or services or that has any interest in the Patents-in-Suit or the outcome of this litigation; (h) all other persons and entities directly or indirectly acting or purporting to act on behalf, or under the actual or constructive control, of Defendant; (i) Maquet's parent company, Getinge AB; and (j) Maquet's parent company, Getinge Group.

(Perrin Decl., Ex. B at 1–2). Maquet objected to this all-encompassing definition in March 2017:

> Maquet objects to the Definition of "Maquet," "you," "your," and "Defendant" as vague, ambiguous, overly broad, unduly burdensome, and seeking documents and information that are neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence, at least in part as a result of the inclusion of, but not limited to, (a) Walid N. Aboul-Hosn, William R. Kanz, Bruce Baker, and any other inventors of the invention or inventions disclosed by the Patents-in-Suit … , (i) ***Maquet's parent company, Getinge AB***, and (j) ***Maquet's parent company, Getinge Group***.

(D.I. 247-1 at 5 (emphasis added)).

---

[2] Abiomed only provides Maquet's ***objections and responses*** to Abiomed's document requests. (*See* D.I. 247 at ¶ 5; D.I. 247-1). Abiomed's omission of the full text of its actual requests violates Local Rule 37.1(b)(4), which requires memoranda supporting discovery motions to "state with particularity … [e]ach … request for production … raising an issue to be decided by the court."

In the ensuing discovery negotiations, Maquet has consistently explained that it has neither the legal right nor the practical ability to access Getinge's documents. (*See e.g.*, D.I. 247-3 at 1–2; 247-8 at 2–3; D.I. at 2–5). When counsel for Abiomed informed the Court during a June 2017 status conference that it potentially sought "overseas evidence" from Getinge, the Court advised in no uncertain terms: "My strong recommendation is, if you need to go to Sweden, do it in the next few months and not next winter. Okay?" (D.I. 67 at 10:3–11:4). The Court elaborated: "If we're going to have to do … Hague Conventions, … let's get that going because that's going to take a long time …." (*Id.* at 11:22–25). For reasons that Abiomed has not explained to Maquet and does not provide in its opening brief, Abiomed never attempted to obtain discovery of Getinge through the Hague Convention. Having failed to do so, Abiomed instead filed the instant motion to compel over sixteen months after the Court's "strong recommendation" above.

Moreover, in the twenty months that have elapsed since Abiomed's initial discovery requests, Abiomed has repeatedly made vexatious and improper discovery demands targeting Getinge. In May 2017, Abiomed noticed a deposition of Abraham Ronai, an attorney who holds the title General Counsel for Getinge Group. In view of the burdensome privilege concerns implicated by such a deposition, Maquet moved for a protective order precluding Abiomed from deposing Mr. Ronai in July 2017 (D.I. 82); Abiomed filed a competing motion to compel the deposition of Mr. Ronai (D.I. 78). In October 2017, the Court granted a protective order precluding the deposition. (D.I. 160).

Weeks after filing its unsuccessful motion to compel the deposition of Mr. Ronai, Abiomed filed a motion for leave to amend its complaint to join Getinge as a declaratory judgment defendant. (D.I. 95). Abiomed argued—notwithstanding a wholesale lack of evidence and legal support—that Getinge "has substantial rights in the patents and undoubtedly a great deal of highly

relevant documentation on the acquisition, valuation, and other core issues concerning the patents in suit." (D.I. 96 at 8). The Court denied Abiomed's motion in October 2017. (D.I. 161).

Not to be dissuaded, when Abiomed's answer in *Maquet II* became due in January 2018, Abiomed included a third-party complaint against Getinge, premised on the same untenable allegations that the Court had just dismissed in *Maquet I* months earlier. (*Maq. II*, D.I. 14 at ¶ 27). Getinge thus moved to dismiss the third-party complaint. (*Maq. II*, D.I. 43). For the same reasons that prevailed in *Maquet I*, the Court granted Getinge's motion to dismiss. (*Maq. II*, D.I. 78).

In April 2018—months after filing its third-party complaint but prior to service of the same—Abiomed filed a motion to compel discovery of "Maquet's patent assessments and valuations" in *Maquet I*. (D.I. 206). Therein, Abiomed sought an order requiring Maquet to specifically characterize its patent licensing negotiations as "valuations." (D.I. 207). The Court, once more, denied Abiomed's meritless discovery demand. (D.I. 237).

Against this backdrop, Abiomed's instant motion is the latest in a lengthy crusade to harass Getinge and drive up litigation costs, in disregard of the corporate distinctions between Maquet and Getinge. This latest effort by Abiomed should fail, as did its previous efforts.

### C.    Maquet's Proportional Document Productions

Notwithstanding Abiomed's overly broad document requests, unexplained failure to seek third-party discovery of Getinge under proper channels, and incessant litigation maneuverings, Maquet has corresponded and conferred with Abiomed on countless occasions in attempt to reach a compromise regarding the proportional scope of Maquet's document production. Maquet ultimately agreed to produce responsive documents belonging to ***any Getinge Group entity***, so long as the documents or copies thereof were located within the U.S. (Maquet offered this compromise without admitting that all such documents were properly within the scope of Federal

Rules of Civil Procedure 26 and 34). (*See, e.g.*, 247-4 at 2; 247-6 at 1). In a July 2017 joint letter

to the Court, Maquet explained this position to the Court:

> Maquet further has been and is already searching for, collecting, and producing
> relevant, non-privileged documents from Getinge entities that are located in the
> United States and are responsive to [Abiomed's RFPs]. Maquet, however, cannot
> agree at this time to produce documents from non-party Getinge entities. Abiomed
> is not entitled to these documents under the Federal Rules and collecting foreign
> documents held by non-parties is excessively burdensome on Maquet.

(D.I. 73 at 3).

Accordingly, Maquet has searched Getinge Group entities in the U.S., and as a result

located and produced a vast number of the very same documents purportedly now sought in

Abiomed's instant motion to compel. Specifically, Maquet has produced:

- Over 1,000 pages comprising the entire set of transaction documents relating to Getinge's 2008 acquisition of assets from Boston Scientific Corp., whereby Maquet acquired rights in the patents-in-suit;

- Over 15,000 pages evidencing the design and development of the patents-in-suit, which Maquet obtained by agreement in connection with its acquisition of the patents-in-suit;

- The ███████████████████, and hundreds of pages of licensing negotiations involving the patents-in-suit (some of which Abiomed has characterized as "assessments" and "valuations" of the patents-in-suit and—as discussed in Section II.B, *supra*—moved to compel Maquet to characterize likewise); and

- Numerous other documents attributable to Getinge but made accessible to Getinge Group entities within the U.S., such as intranet site pages.

(Perrin Decl. at ¶ 11). Maquet has also searched for but did not locate non-privileged assessments

or valuations of the patents-in-suit. (*Id.*).

In connection with discovery negotiations pursuant to the Stipulated ESI Order in this case

(D.I. 61), Abiomed also requested that Maquet produce custodial ESI materials belonging to, *inter*

*alia*, Abraham Ronai, General Counsel for Getinge Group, and Joacim Lindoff, former CEO of

Getinge located in Sweden. (Perrin Decl., Ex. C at 1). Maquet initially objected to both such

custodians, particularly in view of the burdensome privilege concerns implicated by broad

discovery of Mr. Ronai's ESI materials, and Maquet's lack of possession, custody, or control of Mr. Lindoff's foreign ESI materials. Nonetheless, in the interests of compromise and cooperation, Maquet ultimately agreed to search and produce the non-privileged emails of Mr. Ronai, which required an immense review effort and resulted in a privilege log of over 10,000 entries, each of which required attorney review. Moreover, Maquet sought and eventually obtained Getinge's limited authorization to produce foreign ESI materials belonging to Mr. Lindoff. Maquet undertook this effort and offered this concession under the explicit representation that it did not have a legal right to, or possession, custody, or control of, any such materials, and that it did not thereby waive its right to object to any further demands for production of foreign Getinge documents. (247-12 at 2–4).

In sum, Maquet has already produced a substantial volume of highly relevant discovery.

### D.    Abiomed's Instant Motion to Compel

Maquet's letter of March 9, 2018 articulated its position that the Federal Rules do not permit the additional broad, burdensome, costly, and disproportionate discovery Abiomed sought:

> Maquet has repeatedly confirmed that it will not agree to unfettered discovery in this case beyond the limitations imposed by the Federal Rules of Civil Procedure, particularly the limitation that permissible discovery is constrained to documents within the producing party's possession, custody, or control. Nonetheless, Maquet has confirmed—for Abiomed's benefit—that it agrees to produce documents of other Getinge entities to the extent such documents are located within the U.S. *See, e.g.*, September 6, 2017 letter from W. Perrin at 2; D.I. 73, July 3, 2017 joint letter to the Court, at 3 ("Maquet . . . has been and is already searching for, collecting, and producing relevant, nonprivileged documents from Getinge entities that are located in the United States and are responsive to [Abiomed's] RFPs."); July 10, 2017 email from W. Perrin (same); July 21, 2017 letter from W. Perrin, at 1–2 (same); August 17, 2017 letter from W. Perrin, at 3 (confirming that Maquet is searching for information relating to Getinge in the possession, custody, or control of Maquet).
>
> …
>
> Maquet has already provided confirmation that its productions encompass documents located within the U.S. of Getinge Group entities. This accommodation

by Maquet, which goes beyond Maquet's obligations under the Federal Rules, should not and does not require Maquet to comply with any other unsupported demands by Abiomed.

(247-12 at 2–4). On April 11, 2018, Maquet also supplemented its response to Abiomed's

Interrogatory No. 14 in relevant part as follows:

> With respect to email documents, the current email documents of all Getinge Group entities are hosted and stored by Microsoft Office 365 Enterprise. Maquet IT personnel do not have access to the email documents of any Getinge AB individual without express authorization from Getinge AB….
>
> With respect to non-email documents located within the U.S., as previously represented, Maquet has agreed to produce relevant, responsive, non-privileged non-email documents of Getinge Group entities to the extent such documents are located within the U.S. In view thereof, Maquet's access to documents and records, practical ability to retrieve documents and records, and legal right to retrieve documents and records from any Getinge Group entity within the U.S. is not relevant.
>
> With respect to non-email documents located in Sweden, Maquet has no legal right to retrieve relevant, responsive, non-privileged non-email documents (to the extent that they exist) outside the U.S. from any Getinge Group entity. However, Maquet may request that Getinge AB provide such documents and records to Maquet or allow Maquet to access them (to the extent that they exist), and Getinge AB may elect, in its sole discretion, to agree to or deny Maquet's request.
>
> To the extent this Interrogatory further seeks information concerning Maquet's "practical ability to retrieve documents … from any Getinge entity … located in … Sweden," Maquet maintains its objection that such request is both vague and ambiguous to the extent it is not clear how the phrase "practical ability" differs from "access" or "legal right," and also not relevant and not proportional to the needs of the case to the extent it seeks information concerning documents that are not within Maquet's possession, custody, or control and that are therefore not within the scope of permissible discovery pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure. To be sure, district courts find no control, and thus no obligation to produce discovery, where subsidiary corporations are not "agents" or "alter egos" of their corporate parent. [Citing cases (*see* Section IV.B.1, *infra*)]. With respect to the instant patent dispute between Maquet and Abiomed, Maquet owns all substantial rights in the Patents-in-Suit and is the sole party capable of asserting those patents against Abiomed. *See* MAQ_00000001–1106. Therefore, Getinge AB cannot be considered an "agent" or an "alter ego" of Maquet for purposes of Maquet's enforcement of the Patents-in-Suit.

(D.I. 247-15 at 3–5).

Notwithstanding the foregoing, Abiomed renewed its improper demands for discovery of Getinge documents, and the parties reached an impasse. In the instant motion, Abiomed contends that Maquet is obligated to search for (and collect and produce, if any such documents exist) "four broad categories of patent validity and valuation documents" located outside the U.S.:

1. Documents relating to the acquisition of the patents from Boston Scientific that discuss the patents and any related patent applications, including any due diligence performed by Getinge in connection with the transaction.

2. Documents that assess or value the patents and related patent applications transferred to Maquet.

3. Documents related to any negotiations with Thoratec to license any rights derived from the patents, whether or not a license was ultimately granted.

4. Any prior art related to the patents that Getinge Group companies may have retained whether obtained before, during, or after the transaction with Boston Scientific.

(D.I. 246 ("Ab. Br.") at 2 & 17) (hereinafter, the ***"Requested Discovery"***). As discussed below, the allegations Abiomed relies on to support its motion are insufficient to establish that the Requested Discovery is appropriate under the Federal Rules.

## III.    THE REQUESTED DOCUMENTS ARE BEYOND THE SCOPE OF RULE 26(b)

### A.    Rule 26(a) Legal Standards

Under Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the amount in controversy, the importance of the issues at stake in the action, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." This Court "must limit the frequency or extent of" any discovery that falls outside that scope. Fed. R. Civ. P. 26(b)(2)(C)(iii). This Court also "must limit the frequency or extent of discovery otherwise allowed by [the Federal Rules] or by local rule if it determines that: (i) the discovery sought is

unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; [or] (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." *Id.* at 26(b)(2)(C)(i)–(ii). A party moving to compel discovery bears the burden of showing that the discovery sought is properly within the scope of Rule 26. *Johansen v. Liberty Mut. Group, Inc.*, 15-CV-12920-ADB, 2017 WL 6045419, at *1 (D. Mass. Dec. 6, 2017).

### B.    Rule 26(a) Arguments

As an initial matter, the Requested Discovery is unreasonably cumulative and/or duplicative, and therefore subject to the limitations of Rule 26(b)(2)(C). Abiomed is already in possession of the entire 2008 transaction involving the patents-in-suit; Abiomed has characterized other already-produced documents as "valuations" of the patents-in-suit; Maquet has confirmed production of ███████ and all licensing negotiations concerning the patents-in-suit; finally, Maquet has produced the complete file histories of the patents-in-suit, which reference all prior art disclosed in connection with prosecution of the patents. Furthermore, other custodial and non-custodial documents produced by Maquet, including the ESI materials of Mr. Ronai, relate to the categories of the Requested Discovery. Any additional documents regarding these categories that *may* conceivably exist solely in Getinge's possession outside the U.S. would likely be unreasonably cumulative of, if not wholly duplicative of, discovery already produced to date.

Moreover, even assuming *arguendo* that Getinge does possess some non-cumulative, non-duplicative, non-privileged documents within the broad categories of the Requested Discovery, and even further assuming that Maquet had control over such foreign Getinge documents (which, as discussed in Section IV, *infra*, Maquet does not), the Requested Discovery would still not be proportional to the needs of the case. The proportionality analysis under Rule 26(b)(1) requires consideration of the amount in controversy, the importance of the issues at stake in the action, the

11

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Abiomed argues that the Requested Discovery relates to "critical issues of validity and valuation of the patents" (Ab. Br. at 8) without acknowledging that discovery previously produced by Maquet and referenced above already provides substantial discovery on these very topics; Abiomed does not identify any outstanding deficiencies in Maquet's production of such documents located in the U.S. Any marginal benefit Abiomed may gain by obtaining additional foreign Getinge documents would be vastly outweighed by the burden and expense of the Requested Discovery.

The lack of proportionality of the Requested Discovery is particularly apparent in view of the fact that Abiomed could have sought, but did not seek, such discovery directly from Getinge years ago. Instead, Abiomed has improperly demanded that Maquet produce documents that it does not itself possess. Abiomed disregarded the Court's explicit instruction to expediently seek any foreign third-party discovery under the Hague Convention and should not now be permitted to further prejudice Maquet with costly and burdensome discovery to remedy its own failures.

Finally, Abiomed's Requested Discovery likely does not even exist. Abiomed baldly speculates, without any support from the thousands of documents produced to date, that, "[a]s part of [Getinge's acquisition of the patents from Boston Scientific and transfer of those patents to Maquet], Getinge (a publicly traded company) **would have** performed diligence to evaluate the intellectual property it was acquiring, which **would typically entail** analysis of the patent, its claims, and prosecution history, and any technical issues related to the technology." (Ab. Br. at 9 (emphasis added)). Abiomed fails to inform the Court that the transaction at issue involved dozens of companies and hundreds of pages of transferred assets, including patents, real property, and other tangible and intangible assets. (Perrin Decl. at ¶ 11). To the extent Maquet has not located

any additional documents in the U.S. related to the broad categories of the Requested Discovery,

it is more likely than not that no such additional documents exist, especially because Maquet has

already searched for and produced, for example, the transaction documents referenced above,

design and development documents relating to the inventions of the patents, ███████████

█████, and licensing negotiations involving the patents. (*See* § II.C, *supra*).

## IV.   THE REQUESTED DOCUMENTS ARE BEYOND THE SCOPE OF RULE 34(a)

### A.   Rule 34(a) Legal Standards

Pursuant to Rule 34(a)(1), a party may request production of any documents within the

scope of Rule 26 that are "in the responding party's possession, custody, or control." "Control"

has been "defined not only as possession, but as the legal right to obtain the documents requested

upon demand." *Calzaturficio S.C.A.R.P.A. s.p.a. v. Fabiano Shoe Co., Inc.*, 201 F.R.D. 33, 38–39

(D. Mass. 2001) (quoting *Searock v. Stripling*, 736 F.2d 650, 653 (11 Cir., 1984)). In *FM*

*Generator, Inc. v. MTU Onsite Energy Corp.*, No. 14-cv-14354-DJC, 2016 WL 8902603 (D. Mass.

Aug. 25, 2016), Magistrate Judge Boal summarized the standards governing whether a subsidiary

has "control" over documents in the possession of its corporate parent:

> Where documents are in the possession of the corporate parent, but are sought from
> the subsidiary, a court must look to the specific nature of the transactional
> relationship between the subsidiary and the parent company when determining
> whether control exists. *See Addamax Corp. v. Open Software Found., Inc.*, 148
> F.R.D. 462, 467 (D. Mass. 1993). Courts have found control to exist where:
>
> (1) the alter ego doctrine ... warrants piercing the corporate veil;
>
> (2) the subsidiary was an agent of the parent in the transaction giving rise to the
> lawsuit;
>
> (3) the relationship is such that the agent-subsidiary can secure documents of the
> principal-parent to meet its own business needs and documents helpful for use in
> litigation;
>
> (4) there is access to documents when the need arises in the ordinary course of
> business; and

(5) subsidiary was marketer and servicer of parent's product ... in the United States.

*Pitney Bowes, Inc. v. Kern Intern., Inc.*, 239 F.R.D. 62, 66–67 (D. Conn. 2006) (internal citations omitted); *see also Addamax*, 148 F.R.D. at 465. When determining whether documents in the possession of one corporation may be deemed under the control of another corporation, courts also consider whether there has been an exchange or intermingling of directors, officers, or employees of the two corporations, whether there is any benefit or involvement by the non-party corporation in the transaction, and whether there is any involvement of the non-party corporation in the litigation. *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998). Thus, courts have expanded the "control" test to include not only a legal right, but also the actual ability of the subsidiary to access and obtain the requested documents. *Addamax*, 148 F.R.D. at 467.

Although subsidiary corporations wholly owned by the parent have no right to order the parent corporation to turn over documents, the presence of the factors listed above permit a court to draw an inference that the subsidiary has "control" over the parent company's documents. *Uniden*, 181 F.R.D. at 306.

*Id.* at *3. The party seeking such discovery bears the burden of making a prima facie showing that the subsidiary "controls" the documents of its parent. *Id.* (citing <u>*Addamax*</u>, 148 F.R.D. at 465 n.3).

### B.      Rule 34(a) Arguments

#### 1.      Maquet Does Not Have "Control" Over Getinge's Documents

To the extent any of the Requested Discovery exists exclusively outside the U.S. and is not privileged, cumulative or duplicative of documents previously produced, or otherwise outside the scope of permissible discovery, production by Maquet would still be improper because Maquet has no control over such documents. Abiomed's arguments at pp. 10–15 of its brief do not establish a prima facie case that Maquet has the practical ability to access Getinge's documents located outside the U.S. or reasonably obtains such documents in the ordinary course of business.

Abiomed first contends that the mere existence of a Shared Legal Services department is evidence of Maquet's ***control*** over Getinge documents that exist exclusively overseas. Yet, Abiomed does not dispute that ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████. (*See, e.g., Maq. II*, D.I. 61-4 at 4–8). Kirk Swenson testified that ████████

████████████████████████████████████████████████████████████████████

████████████████████. (D.I. 247-9 at 61:15–76:8). There is no indication that the

Requested Discovery would therefore include documents of the Legal Shared Services

departments, as the record establishes all or virtually all such documents or copies thereof would

exist in the U.S. and therefore have been searched.[3]

    Abiomed then cites the unextraordinary deposition statement that ███████████████

████████████████████████████████████████████████████████████████████

█████████ (*Id.* at 113:1–10). This familiar consequence of electronically-stored information is

precisely why Maquet agreed to produce Getinge Group documents located in the U.S. without

regard for corporate distinctions. Abiomed itself observes, "[e]vidently, strict legal ownership is

less important to Maquet and other Getinge Group companies than the ability to access the

documents." (Ab. Br. at 12). This observation is consistent with Maquet's agreement to produce

documents that it has the ***ability*** to access—*i.e.*, documents located within the U.S.—regardless of

the "strict legal ownership" (Abiomed's term) of the documents in question.

    Lastly, Abiomed states summarily that ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ (*Id.*). Edward Barragan, IT

Infrastructure Manager at Maquet, testified that ████████████████████████████

---

[3] Abiomed's brief reference to a shared finance function (p. 12) is likewise unavailing. As with
Legal Shared Services, the testimony cited does not establish that the documents in question are
Getinge documents that exist exclusively outside the U.S. To the extent any such documents exist
within the U.S., again, Maquet has agreed to search those documents.

███████████████████████████████████████████████████████████████

███████████████████████████ In addition, both Mr. Barragan and Mr. Swenson testified that

███████████████████████████████████████████████████████████████

███████████. (*Id.* at 128:15–129:12; D.I. 247-9 at 279:10–280:16). In any event, as discussed in

Section II.A, *supra*, there are practical realities and technical restrictions that prevent Maquet from

accessing the documents and records of Getinge located outside the U.S.

Courts in this district have found no control in similar circumstances. In *FM Generator, Inc. v. MTU Onsite Energy Corp.*, No. 14-cv-14354-DJC, 2016 WL 8902603 (D. Mass. Aug. 25, 2016), Magistrate Judge Boal held that a subsidiary did not "control" the documents of its parent company where the subsidiary and parent were not "alter egos" and did not "operate as one." There was no evidence of "intermingling" between the companies' officers and directors, and "to the extent" the parent company "directly communicated" with the subsidiary, such documents would be in the possession of the subsidiary and thus already have been produced. Finally, there was no evidence that the defendant had the ability to secure documents from the parent except for documents available through the parent's intranet, and the parent had declined to produce documents for the litigation. *Id.* at *3–4 (also noting that the moving party "is free to pursue these documents through a subpoena issued pursuant to Rule 45 of the Federal Rules of Civil").

Maquet's April 10, 2018 supplemental response to Abiomed's Interrogatory No. 14 cited case law that is consistent with *FM Generator*:

> [D]istrict courts find no control, and thus no obligation to produce discovery, where subsidiary corporations are not "agents" or "alter egos" of their corporate parent. *See e.g.*, *Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.*, 316 F.R.D. 89 (D. Del. 2016) (denying patentee's motion to compel accused infringer, a U.S. distributor, to produce technical documents of the accused product that were in possession of a foreign affiliated corporation, which had developed and manufactured the accused product); *Heraus Electro-Nite Co. v. Midwest Instrument Co., Inc.*, No. 06-355, 2006 WL 3004877 (E.D. Pa. Oct. 18, 2006) (denying accused

infringer's motion to compel patentee to produce documents possessed by related corporations).

(D.I. 247-15 at 4–5).[4] As further explained in Maquet's interrogatory response above, Maquet owns all substantial rights in the patents-in-suit and is the sole party capable of asserting those patents against Abiomed. (*Id.*) Therefore, Getinge cannot be considered an "agent" or an "alter ego" of Maquet for purposes of enforcing those patents against Abiomed.

**2.     Maquet's Concession to Provide Limited Documents from Getinge Does Not "Open the Door" to Unfettered Discovery from Getinge**

Unable to present credible evidence of Maquet's control of Getinge's documents in the ordinary course of business, Abiomed disingenuously contends that "Maquet has already demonstrated an ability to produce documents from its corporate affiliates located abroad for its own purposes in collecting and producing materials in the custody of Joacim Lindoff." (Ab. Br. at 15–16). Abiomed well knows that Maquet did ***not*** produce the custodial ESI materials of Mr. Lindoff ***"for its own purposes."*** Rather, ***Abiomed*** requested Mr. Lindoff as an ESI custodian. (Perrin Decl., Ex. C at 1). Maquet ***disputed*** the relevance of the information sought and confirmed its lack of possession, custody, or control of such information. However, "as an accommodation to Abiomed and in an attempt to expedite an agreement on ESI discovery," Maquet "contacted individuals at the appropriate third party" and sought "permission to collect, review, and produce ESI documents relating to Mr. Lindoff." (Perrin Decl., Ex. D at 1). Getinge agreed to the request. (Perrin Decl., Ex. E at 1; Ex. F at 1). That Abiomed now attempts to use Maquet's (and Getinge's) good-faith discovery concession as a sword to argue that Maquet and/or Getinge have somehow

---

[4] *See also Pitney Bowes, Inc. v. Kern Int'l, Inc.*, 239 F.R.D. 62,65-69 (D. Conn. 2006) (denying motion to compel production of parent entity's documents where there was no evidence of a close corporate relationship between parent and subsidiary, notwithstanding that certain of parent's documents were shared in the ordinary course of business).

opened the door to further third-party discovery—notwithstanding the explicit reservation of rights in Maquet's prior correspondence—is meritless and unprofessional.

Likewise, to the extent Maquet has successfully obtained any other documents from Getinge, Abiomed makes no showing that Maquet has selectively cherry-picked documents. Rather, Abiomed only alleges that ████████████████████████████████████████ ████████████████████████████████████ (Ab. Br. at 4–5). First, the testimony Abiomed relies upon ████████████████████████████████████ ████. Second, these documents are directly responsive to Abiomed's requests for production, and are again in no way documents Maquet has selectively produced for its own purpose. Third, Getinge's purported provision of this limited and routine information does not establish that Maquet has broad "control" over *all* Getinge documents, let alone sufficient control to demand Getinge to conduct an extensive search for the vague, duplicative, cumulative, and likely non-existent categories of Requested Discovery at issue in Abiomed's instant motion.

Finally, Abiomed makes no showing that, if Maquet were ordered to ask Getinge to provide the Requested Discovery, Getinge would comply with such a request or have a legal obligation to do so. Not only is Abiomed's motion potentially futile, it also seeks to indirectly litigate Getinge's rights through an intermediary. For these precise reasons, courts refrain from ordering a litigant to produce third-party documents in the possession of "a separate legal entity …, possibly having different legal and commercial interests at stake," whose "rights should not be determined in absentia." *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D.D.C. 1979) (denying motion to compel Plough to produce documents from its affiliate Schering, where there was no evidence that Plough and Schering "have identical Boards of Directors, or that their respective business operations are so intertwined as to render meaningless their separate corporate identities").

### 3. Abiomed's Case Law Regarding "Control" Is Inapposite

Abiomed only provides a single decision from this district in support of its "control"

argument, *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 467 (D. Mass. 1993).

Maquet addressed that case in its letter dated March 9, 2018 to Abiomed:

> The *In re Addamax Corp. v. Open Software Found* decision does not establish that
> "control" exists, as Abiomed contends, whenever "an entity has 'access to the
> documents' or 'ability to obtain the documents.'" Rather, the Court there observed
> Third Circuit precedent establishing that a party is only obligated to produce
> discovery in the possession of its non-party parent corporation "where the 'alter
> ego' doctrine warrant[s] piercing the corporate veil," or "where the subsidiary [is]
> an agent of the parent in the transaction giving rise to the suit and in litigating the
> suit on the parent's behalf." *See id.* at 465 (quoting *Gerling Intern. Ins. Co. v. C.I.R.*,
> 839 F.2d 131, 140–141 (3d Cir. 1988)). Notably, *Addamax* involved discovery
> directed to a corporation's relationship with an entity that had been funded by (and
> entered into a Sponsorship Funding Agreement with) an ultimate subsidiary of the
> corporation. Evidence in that case established that the corporate parent at issue was
> "apparently considered, or at least listed, . . . both as a sponsor on [the] sponsor list
> and as a sponsor contact." *Id.* at 467. Moreover, the corporate parent had explicitly
> "exercised … right[s]" under the Sponsorship Funding Agreement by, *inter alia*,
> terminating board members of the sponsored entity and appointing representatives
> of the corporate parent instead. Thus, the Court ultimately noted that, "most
> particularly," the parent's "exercise of the power to terminate and appoint members
> to the [sponsored entity]'s Board, is sufficient to make out a prima face case that
> [the subsidiary] and [the parent] acted as one with respect to [activities concerning
> the sponsored entity]." *Id.*
>
> The highly case-specific facts at issue in *Addamax* are not even remotely similar to
> the instant litigation. Here, Maquet unequivocally owns the Patents-in-Suit, as
> established by incontrovertible documentary evidence. Nothing exists—and
> certainly nothing that Abiomed has cited—establishing that Getinge is an "agent"
> or an "alter ego" of Maquet for purposes of Maquet's enforcement of the Patents-
> in-Suit.

(D.I. 247-12).

Other cases Abiomed relies upon are from other circuits and, in any event, similarly

distinguishable. In *Cooper Industries, Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 919–20

(S.D.N.Y. 1984), the court found a subsidiary company that "sells and services planes" to have

"control" of "service manuals and blueprints" in the possession of its non-party parent company

that manufactures said planes. The court explained, "it is inconceivable that [subsidiary] would not have access to these documents," given that the documents "*all relate* to the planes that [subsidiary] *works with every day.*" *Id.* (Also, "counsel for [subsidiary] instructed plaintiff to make all such [document] requests through him because he represented the [non-party parent].") (emphasis added). In *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438 (D.N.J. 1991), the court found the facts to be "analogous" to those in *Cooper*. The requested documents of the non-party parent entity concerned a specific transaction—"negotiations for the sale of scrap metal"—in which the defendant subsidiary and the parent entity both participated and "acted … 'as one.'" *Id.* (explaining, "[parent] can be viewed as engineering the deal in much the same way as British Aerospace produced the aircraft" in *Cooper*). Here, Abiomed makes no showing that the Requested Discovery would involve Maquet or ever—let alone *every day*—be used by Maquet.

## V.    CONCLUSION

Maquet has already gone above and beyond its discovery obligations under the Federal Rules of Civil Procedure. Abiomed has not carried its burden in establishing that the Requested Discovery is either within the scope of permissible discovery pursuant to Rule 26 or within Maquet's possession, custody, or control as required by Rule 34. Accordingly, Abiomed's motion to compel the Requested Discovery must be denied.

Dated: October 19, 2018                        Respectfully submitted,

                                                              */s/ Wade G. Perrin*
                                                              Michael S. Connor
                                                              ALSTON & BIRD LLP
                                                              101 South Tryon Street, Suite 4000
                                                              Charlotte, NC 28280
                                                              Tel: (704) 444-1000 / Fax: (704) 444-1111
                                                              mike.connor@alston.com

Paul Tanck
Christopher L. McArdle
Wade G. Perrin
Andrew J. Ligotti
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel: (212) 210-9400 / Fax: (212) 210-9444
paul.tanck@alston.com
chris.mcardle@alston.com
wade.perrin@alston.com
andy.ligotti@alston.com

Margaret K. Minister (BBO #624975)
Pierce Atwood LLP
254 Commercial Street
Portland, ME 04101
Tel: (207) 791-1100 / Fax: (207) 791-1350
mminister@pierceatwood.com

Michael J. Derderian (BBO #682757)
PIERCE ATWOOD LLP
100 Summer Street, Suite 2250
Boston, MA 02110
Tel: (617) 488-8100 / Fax: (617) 824-2020
mderderian@pierceatwood.com

*Attorneys for Maquet Cardiovascular LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the date indicated below, I have caused the foregoing papers to be

filed through the Court's CM/ECF system, thereby causing automatic notifications of such filing

to be sent to all counsel of record, which therefore constitutes services of the foregoing papers.


This 19th day of October, 2018.

*/s/ Wade G. Perrin*

Wade G. Perrin