# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**ABIOMED, INC.,**                                              )
                                                               )
      **Plaintiff/Counter-Defendant,**     )
                                                               )     **Civil Action No.**
    **v.**                                         )     **16-10914-FDS**
                                                               )
**MAQUET CARDIOVASCULAR LLC,**                                  )
                                                               )
      **Defendant/Third-Party**            )
      **Plaintiff/Counter-Defendant/**     )
      **Counter-Claimant,**                )
                                                               )
    **v.**                                         )
                                                               )
**ABIOMED EUROPE GMBH,**                                        )
                                                               )
      **Third-Party Defendant,**           )
                                                               )
    **v.**                                         )
                                                               )
**ABIOMED R&D, INC.,**                                          )
                                                               )
      **Third-Party Defendant/**           )
      **Counter-Claimant.**                )
_____)

## MEMORANDUM AND ORDER ON MAQUET'S MOTION FOR LEAVE TO SERVE THIRD SUPPLEMENTAL INFRINGEMENT CONTENTIONS

**SAYLOR, C.J.**

This is an action for patent infringement.  Defendant and counterclaim-plaintiff Maquet

Cardiovascular, LLC owns six patents directed to guidable intravascular blood pumps and

related methods.  Plaintiff and counterclaim-defendants Abiomed, Inc.; Abiomed R&D, Inc.; and

Abiomed Europe GmbH (collectively, "Abiomed") manufacture the "Impella" line of

intravascular blood pumps.  Abiomed filed this action seeking a declaratory judgment that its

Impella products do not infringe Maquet's patents and that the patents are invalid.  Maquet has filed a counterclaim seeking a declaratory judgment and damages for infringement.

Maquet has filed a motion seeking leave of the court to serve third supplemental infringement contentions, which formally add the "Impella CP with SmartAssist," also known as the "Impella CP Optical," to its list of accused products.  The Impella CP with SmartAssist is a new product in Abiomed's line of intravascular blood pumps that was released in May 2019.

For the reasons set forth below, the motion will be granted in part and denied in part. Maquet will be permitted to supplement its infringement contentions by adding a claim that the Impella CP with SmartAssist infringes Claim 16 of U.S. Patent No. 7,022,100, but will not be permitted to add a claim that the product infringes Claim 17 of the same patent.

## I.      **Factual and Procedural Background**

Abiomed filed a complaint on May 19, 2016, seeking declaratory judgment that four of its Impella products do not infringe Maquet's patents:  the Impella 2.5, Impella 5.0, Impella CP, and Impella RP.  After amendments to the pleadings to add three recently granted patents, on November 20, 2017, Maquet filed an answer and amended counterclaim asserting that those four products infringe its patents.[1]  Maquet served its initial infringement contentions on May 25, 2017; its first supplemental contentions on October 9, 2018; and its second supplemental contentions on May 31, 2019.  (Abiomed Opp. at 2).  In each of the first three iterations of its infringement contentions, Maquet accused the same four Impella products.

The Impella line of products consists of FDA-approved guidable heart pumps that are used in hospitals and heart centers.  (Abiomed Press Release, Maquet Ex. 3).  Each of the

---

[1] The amended pleadings concern infringement of six patents owned by Maquet:  U.S. Patent Nos. 7,022,100; 8,888,728; 9,327,068; 9,545,468; 9,561,314; and 9,597,437.

accused products includes a sensor to detect blood pressure proximate to the pump.  (Maquet's Third Supp. Infringement Contentions, Maquet Ex. 14, at 24-31).  The Impella RP passes through the right atrium to provide right heart support.  (Maquet Reply at 1).  The Impella 2.5, 5.0, and CP are inserted into the left ventricle to provide left heart support.  (*Id.*).  The products vary in motor diameter, blood flow rate, and price.  (*Id.*).  Sales of the Impella CP have grown each year since its introduction in 2012, making it Abiomed's current best-selling left heart support product.  (*Id.*).  Abiomed sold 17,819 units of the Impella CP in the 2019 fiscal year, which accounted for approximately 75% of its left heart product sales.  (*Id.*; *see also* Maquet Ex. 15 at 2-3).

On May 16, 2019, Abiomed issued a press release announcing the commercial launch of the "Impella CP with SmartAssist," also known as the "Impella CP Optical," a new product that replaces the piezoelectric blood-pressure sensor of the Impella CP with an optical blood-pressure sensor.  (Maquet Ex. 3; *see also* Tr. of Oct. 25, 2019 Hearing at 15-16).  In all other respects, the two products appear to be identical.[2]  Abiomed reported selling 1,214 units of Impella CP with SmartAssist in fiscal year 2019.  (Maquet Ex. 15 at 3).  Its press release stated that "the majority of Impella CP heart pumps in the U.S. will be transitioned to SmartAssist over the next fiscal year."  (Maquet Ex. 3).

According to Maquet, the May 2019 press release was the first time it learned of the existence of the Impella CP with SmartAssist.  (Maquet Mem. at 3).  Although its Interrogatory No. 1 requested that Abiomed identify all Impella products that had been developed or were in

---

[2] Although the parties disagree in their characterizations of the Impella CP with SmartAssist—Maquet calls it a "mere iterative update" of the CP, while Abiomed calls it an "entirely new product"—both parties appear to agree that the only substantive difference between the CP with SmartAssist and the CP is "different features relating to pressure sensing."  (Maquet Mem. at 7; Abiomed Opp. at 1).

development, Abiomed objected on the ground that the interrogatory was overbroad and only

responded with information about the accused products—the Impella 2.5, 5.0, CP, and RP.

(Abiomed's Seventh Supp. Responses and Objections to Maquet's Interrog. Nos. 1, 7, 9, 14, 15,

Maquet Ex. 5, at 2).

On June 18, 2019, Maquet sent an email to Abiomed stating that it believed the Impella

CP with SmartAssist had recently become commercially available and was covered by Claim 16

of U.S. Patent No. 7,022,100 ("The '100 Patent").  (Abiomed Opp. at 2-3).  On August 7, 2019,

Maquet sent a further e-mail to Abiomed that it believed the Impella CP with SmartAssist

infringed Claims 16 and 17 of the '100 Patent.  (Abiomed Opp. at 3).

The claims in this case have been substantially narrowed to include only Claims 16 and

17 of the '100 patent.  Those claims recite:

> 16.     An intravascular blood pump system comprising: an intravascular blood
> pump having a cannula coupled thereto, a guide mechanism adapted to guide said
> intravascular blood pump and cannula to a predetermined location within the
> circulatory system of a patient, and a blood pressure detection mechanism to detect
> the pressure of the blood proximate at least one of the intravascular blood pump and
> cannula.
>
> 17.     The intravascular blood pump system of claim 16 and further, wherein said
> blood pressure detection mechanism comprises at least one of fluid filled column
> disposed within at least a portion of said cannula, a piezoelectric element coupled to
> at least one of the intravascular blood pump and cannula, and a strain gauge coupled
> to at least one of the intravascular blood pump and cannula.

(Maquet Mem. at 2).  In the Court's September 7, 2018 *Markman* order, it construed the term

"blood pressure detection mechanism" according to its ordinary meaning.  (Mem. and Order on

Claim Constr. at 48-50).  The Court rejected Abiomed's proposed construction of "blood

pressure detection mechanism" as a "means-plus-function" term with one of four claimed

structures: "(a) a fluid filled column disposed within at least a portion of the cannula, (b) a

piezoelectric element coupled to at least one of the intravascular blood pump and cannula, (c) a

4

strain gauge coupled to at least one of the intravascular blood pump and cannula, and (d) calculating blood pressure based on the relationship between the torque and motor current of a motor used to drive the rotor." (*Id.*). The Court noted that "sensing blood pressure is not a core feature of the invention, which is primarily directed to improved guide mechanisms," and therefore "the blood pressure detection mechanisms added to the core invention do not inherently need to be specified in the same way." (*Id.* at 49). In addition, the Court relied upon the specification language of the '468 patent, which described four different types of pressure-sensing features known in the art (mirroring the four claimed structures proposed by Abiomed—a fluid-filled lumen, a piezoelectric element, a strain gauge, and analysis of the torque/current relationship) as a non-exhaustive list, recited "in such a way as to indicate that the precise structure of the [blood pressure sensing] mechanism/element/transducer is unimportant." (*Id.* at 49-50).

This Court set September 17, 2019, as the final deadline for the parties to amend their infringement contentions. On September 17, Maquet filed this motion seeking to amend its infringement contentions to add the Impella CP with SmartAssist to its list of accused products. (Maquet's Third Supp. Infringement Contentions, Maquet Ex. 14).[3]

## II.    **Standard of Review**

The version of Local Rule 16.6 that was in effect at the time of the scheduling order requires the parties to address the timing of initial infringement contentions in their joint scheduling statement. The parties' joint scheduling statement of January 23, 2017, proposed that

---

[3] Maquet's supplemented contentions also added allegations of infringement under 35 U.S.C. § 271(f), which it concedes will be struck if the Court denies its separate motion for leave to file a second amended counterclaim. (Maquet Reply at 3). Because the Court denied that motion on June 24, 2020, all parts of Maquet's third supplemental infringement contentions alleging infringement under § 271(f) will be struck.

the parties could amend their infringement contentions (1) up to 30 days before the *Markman* hearing, (2) within 30 days after the court's ruling on claim construction, or (3) otherwise with leave of court and for good cause shown.  (Joint Statement Pursuant to Local Rule 16.1(D), Jan. 23, 2017).  The scheduling order of March 2, 2017, did not address amendments to infringement contentions, except to set a deadline for final amendments at a date "to be decided." Inadvertently, that date was not established until well after the *Markman* hearing; eventually, the Court set a deadline of September 17, 2019.  (Scheduling Order of Mar. 2, 2017; Tr. of Sep. 10, 2019 Hearing at 13).

Maquet's motion is thus technically within the deadline set by the Court.  Nonetheless, given the very late date of the proposed amendments, the Court will consider the issue under a modified version of the "good cause" standard—that is, it will consider Maquet's diligence, as well as any potential prejudice to Abiomed and to the efficient resolution of this litigation, in determining whether to allow the amendment, while recognizing the potential reliance interest of the parties in the formal deadline.  *See O2 Micro Int'l. Limited v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) (affirming that under a Northern District of California local rule requiring "good cause" to amend patent infringement contentions, the court must first consider the moving party's diligence, and then prejudice to the non-moving party).

III.   **Analysis**

A.   **Diligence**

The first question is whether Maquet has been reasonably diligent in amending its contentions. It does not appear that any evidence about the Impella CP with SmartAssist was available to it before May 16, 2019, when Abiomed announced the commercial release of that product.  There is no indication that Maquet knew, or should have known, of the CP with

SmartAssist when it was drafting its preliminary and first supplemental infringement contentions.  Indeed, Abiomed chose not to disclose information about the development of the CP with SmartAssist in its response to Maquet's interrogatory seeking information about Impella products in development.  Therefore, any failure to name the CP with SmartAssist as an infringing product before May 16, 2019, was not due to lack of diligence by Maquet.

Abiomed contends that Maquet has nonetheless been less than diligent because it failed to amend its infringement contentions immediately after May 16.  It did not include the CP with SmartAssist in its May 31, 2019 second supplemental contentions, and failed to amend its contentions when it notified Abiomed of its intent to accuse the CP with SmartAssist of infringement in its June and August 2019 emails.  Maquet counters that it did not formally move to amend its contentions in June and August because Abiomed's motion to strike Maquet's second supplemental contentions was then pending, and in any event, it did serve its final amended contentions by the September 17, 2019 deadline.[4]

Under the circumstances, while perhaps Maquet could have supplemented its contentions earlier, doing so three months after learning of a new product and less than one month after the Court's ruling on its previous supplemental contentions, and within the formal deadline set by the Court, is sufficient to show reasonable diligence.

### B.   Prejudice

The second issue is whether the proposed amendment would be unduly prejudicial.  To evaluate the potential prejudice to Abiomed, the Court must consider whether the proposed

---

[4] On June 24, 2019, Abiomed moved to strike Maquet's addition of claims under 35 U.S.C. § 271(f) and a claim of literal infringement of the "guide mechanism" term in its second supplemental contentions.  The Court, in an August 23, 2019 ruling, struck the § 271(f) claim but permitted the addition of the claim concerning the "guide mechanism" term.

addition of the Impella CP with SmartAssist introduces a new theory of infringement that would unfairly broaden the scope of the case.  District courts have found that a party may move to add a new or updated product without prejudicing the non-moving party if that addition does not substantially change the asserted infringement theory.  *See, e.g.*, *Bd. of Trustees v. Roche Molecular Sys.*, 2008 U.S. Dist. LEXIS 16556, at *11-14 (N.D. Cal. Mar. 3, 2008) (permitting "late-stage amendment" of infringement contentions to add newly released product because the parties and court had already discussed the infringing technology during claim construction, minimizing prejudice to the nonmoving party); *Zest IP Holdings, LLC v. Implant Direct MFG, LLC*, 2013 U.S. Dist. LEXIS 53664, at *11-12 (S.D. Cal. Apr. 15, 2013) (granting motion to amend infringement contentions to add updated version of accused product, where plaintiff argued that the same patent claims and infringement theories applied); *Digital Reg of Texas, LLC v. Adobe Sys.*, 2014 U.S. Dist. LEXIS 58113, at *11-13 (N.D. Cal. Apr. 24, 2014) (permitting addition of new version of software because the changes did not "fundamentally alter the theory of infringement" and noting that "a new version of software is not necessarily equivalent to an entirely new product").  Conversely, courts disfavor amendments that add new theories of infringement, particularly late in the litigation and near or after the close of discovery, as unduly prejudicial.  *See, e.g.*, *Fast Felt Corp. v. Owens Corning Roofing & Asphalt, LLC,* 2017 U.S. Dist. LEXIS 212728, at *2-3 (N.D. Ohio July 26, 2017) (granting motion to strike infringement contentions that introduced entirely new infringement theories and would disrupt the case schedule); *Adobe Systems v. Wowza Media Sys.*, 2014 U.S. Dist. LEXIS 23153, at *52-53 n.7 (N.D. Cal. Feb. 22, 2014) (striking supplementation that introduced new infringement theories because "prejudice is inherent in the assertion of a new theory after discovery is closed"); *Symantec Corp v. Acronis, Inc.*, 2013 U.S. Dist. LEXIS 29931, at *5 (N.D. Cal. Mar. 5, 2013)

(denying motion to add a new product because it would "substantially expand the scope" of the case).

To evaluate the potential prejudice to Maquet, the Court must similarly determine whether the new product introduces a new infringement analysis, among other reasons because it may affect a claim preclusion defense in the future. "For claim preclusion in a patent case, an accused infringer must show that the accused product . . . in the second suit is 'essentially the same' as the accused product . . . in the first suit." *Nystrom v. Trex Co., Inc.*, 580 F.3d 1281, 1285 (Fed. Cir. 2009) (quoting *Foster v. Hallco Mfg. Co.,* 947 F.2d 469, 480 (Fed. Cir. 1991)). In *Nystrom*, a patent-holder lost its first suit (that is, received a judgment of non-infringement) concerning an accused product, the "Trex I Board," and then filed an infringement action accusing a new, updated version of that product, the "Trex II Board," on the ground that the two products were materially different in shape and texture. *Id.* The Federal Circuit held that claim preclusion barred the second suit. It held that even though the two products were materially different in some aspects, they were materially identical with respect to the relevant claim limitations at issue in both cases. *Id.* In other words, the changes made to the new, updated product did not materially alter the infringement analysis of the claim limitations. *Id.*

Here, Maquet contends that it would be prejudiced if it were not permitted to include claims involving the Impella CP with SmartAssist in this case, because although it is materially different from the Impella CP in some ways, it is materially identical with respect to the asserted claim limitations (Claims 16 and 17 of the '100 patent). (Maquet Mem. at 10). It contends that claim preclusion barring a second suit accusing the CP with SmartAssist would be greatly prejudicial, because the CP is already the best-selling Impella heart pump and the majority of those devices will be transitioned to SmartAssist over the next fiscal year. (*Id.*) Thus, Maquet

would be prevented from collecting damages accruing from the large majority of Abiomed's Impella sales going forward.  (*Id.*)

Maquet further asserts, and the Court agrees, that the only new legal issue presented by the amendment is whether the optical pressure sensor of the Impella CP with SmartAssist is literally the same as, or equivalent to, any one of the three structures identified in Claim 17 of the '100 Patent:  (1) "a fluid filled column disposed within at least a portion of the cannula," (2) "a piezoelectric element coupled to at least one of the intravascular blood pump and cannula," or (3) "a strain gauge coupled to at least one of the intravascular blood pump and cannula."  (Maquet Reply at 11).  The question, then, is whether adding that new issue would unfairly prejudice Abiomed and unduly delay the progress of this litigation.

Adding the Impella CP with SmartAssist would not materially alter Maquet's theory of infringement of Claim 16, which is an independent claim for "an intravascular blood pump system comprising: an intravascular blood pump having a cannula coupled thereto, a guide mechanism adapted to guide said intravascular blood pump and cannula to a predetermined location within the circulatory system of a patient, and a blood pressure detection mechanism to detect the pressure of the blood proximate at least one of the intravascular blood pump and cannula."  The Impella CP with SmartAssist is identical to the Impella CP with regard to the "cannula" term and the "guide mechanism" term.  (Maquet Reply at 4).  Of course, it has a different "blood pressure detection mechanism" than the previously accused products, in that it has an optical blood pressure sensor rather than a piezoelectric blood pressure sensor.  (Tr. of Oct. 25, 2019 Hearing at 15-17).  That should not change the parties' infringement theories, because Claim 16 does not require a specific type of pressure sensor.  All that it requires is that the Impella CP with SmartAssist have *some* sensor that detects the pressure of blood proximate to the pump and/or cannula.  The Court has already construed the term "blood pressure detection mechanism" according to its ordinary meaning,

specifically rejecting Abiomed's suggested mean-plus-function construction that would require the

pressure sensor to have one of four specific structures (including a piezoelectric structure like that of

the Impella CP).  (Mem. and Order on Claim Constr. at 48-50).  The Court found that the language of

the patents suggested that "the precise structure of the [blood pressure sensing] mechanism . . . is

unimportant" to the invention and does not need to be specified.  (*Id.* at 49-50).  Because the "blood

pressure detection mechanism" term does not require any particular structure of the blood pressure

sensor, the updated optical sensor of the Impella CP with SmartAssist does not fundamentally alter

the parties' infringement theories under Claim 16.  No additional claim construction is necessary

under Claim 16.

Claim 17 of the '100 Patent is a different matter.  It is a dependent claim for "an

intravascular blood pump system of claim 16 and further, wherein said blood pressure detection

mechanism comprises at least one of (1) fluid filled column disposed within at least a portion of said

cannula, (2) a piezoelectric element coupled to at least one of the intravascular blood pump and

cannula, and (3) a strain gauge coupled to at least one of the intravascular blood pump and cannula."

The addition of the Impella CP with SmartAssist would thus raise a new legal issue:  whether an

optical sensor qualifies as one of the three named structures.

The resolution of that question is far from obvious.  Maquet's third supplemental

infringement contentions and appended claim charts do not describe how, or in what possible sense,

the new optical sensor is a fluid filled column, a piezoelectric element, or a strain gauge.  (Maquet's

Third Supp. Infringement Contentions, Maquet Ex. 14, at 30).  With respect to Claim 17,

Maquet's claim chart simply states, "The above-identified Impella blood pumps include this

limitation.  The discussion of claim 16 is equally applicable here."  (*Id.*).  That is far from

sufficient to elucidate Maquet's new infringement theory as to Claim 17.  At the very least, if

amendment were permitted, Abiomed (and the Court) would be entitled to further specificity

from Maquet concerning (1) which of the three claimed structures is at issue, (2) how the optical sensor infringes that structure, and (3) whether the optical sensor infringes the claimed structure literally or under the doctrine of equivalents. And Abiomed would have to be permitted an opportunity to amend its own non-infringement and invalidity contentions in response.

The addition of that new issue—that is, how the optical sensor of the Impella CP with SmartAssist could be deemed to be one of the three claimed structures of Claim 17—certainly raises concerns about the management of this litigation going forward.

First, it appears almost certain that further claim construction would be necessary. Earlier in the litigation, the parties did not select any of the specific terms for the structures in Claim 17—fluid filled column, piezoelectric element, or strain gauge—for briefing during the claim-construction process. Maquet states in conclusive terms that no new claim construction is necessary, but that seems difficult to believe. Abiomed, for its part, contends that it is necessary, but has not identified any terms that would have to be construed. Regardless, at this late stage in the litigation, four years after the filing of the case and nearly two years after the *Markman* order, re-opening claim construction would cause considerable additional delays.

Second, it is unclear if adding the Impella CP with SmartAssist would require additional discovery. Additional damages discovery may be required, but that is not likely to be burdensome or time-consuming. As for liability, Maquet's infringement theory as to how the optical sensor qualifies as one of the three named blood pressure sensor structures in Claim 17 is completely undeveloped, and it is difficult to see how the litigation could proceed without more discovery. Maquet contends that Abiomed does not need any additional discovery from Maquet about the Impella CP with SmartAssist, because Abiomed is the sole party in possession of information about that device. (Maquet Mem. at 9). But that is surely incorrect. Maquet has not explained its contentions in sufficiently specific detail even to permit a basic evaluation. At a minimum, therefore, Abiomed

12

would require additional interrogatories simply to understand Maquet's new infringement claims. The Court is concerned about undue delay that might result from reopening discovery at this advanced stage. Fact discovery and expert discovery are complete, and the parties have filed dispositive motions and *Daubert* motions.

Finally, it is by no means clear that fairness requires the inclusion of Claim 17, or indeed that its inclusion will accomplish anything. Because it is a dependent claim, if the new product infringes that claim, it necessarily infringes Claim 16 as well. Adding Claim 17 thus appears to be a largely academic exercise, conferring little if any benefit and adding a new and substantial burden to the litigation.

In sum, Maquet has shown reasonable diligence in moving to amend its infringement contentions to add the Impella CP with SmartAssist as an accused product. Doing so would not affect the infringement analysis of Claim 16, as the Court has already considered and construed the term "blood pressure detection mechanism." However, it would raise potential legal and factual issues in the infringement analysis of Claim 17: specifically, whether the optical sensor of the CP with SmartAssist is a fluid filled column, piezoelectric element, or strain gauge. That amendment would introduce a new theory of infringement, expanding the scope of discovery and claim construction, and further delay the litigation, which is at an already advanced stage. And there appears to be little practical benefit from the addition of Claim 17. Therefore, the Court will permit Abiomed to accuse the Impella CP with SmartAssist of infringing upon Claim 16, but not Claim 17, of the '100 Patent.

## IV.   <u>Conclusion</u>

For the foregoing reasons, Maquet's motion for leave to serve third supplemental infringement contentions adding the Impella CP with SmartAssist to its list of accused products is GRANTED in part as to Claim 16, and otherwise DENIED. Abiomed will be permitted to

amend its non-infringement contentions in response no later than 14 days after the date of this order.

**So Ordered.**

/s/ F. Dennis Saylor, IV

F. Dennis Saylor, IV

Dated:  July 9, 2020                              Chief Judge, United States District Court

14