UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABIOMED, INC., <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> MAQUET CARDIOVASCULAR LLC, <br><br> Defendant/Third-Party Plaintiff/Counter-Defendant/ Counter-Claimant, <br><br> v. <br><br> ABIOMED EUROPE GMBH, <br><br> Third-Party Defendant, <br><br> v. <br><br> ABIOMED R&D, INC., <br><br> Third-Party Defendant/ Counter-Claimant. | Civil Action No. <br> 16-10914-FDS |

**MEMORANDUM AND ORDER ON ABIOMED'S MOTION FOR SANCTIONS**

**SAYLOR, C.J.**

This is an action for patent infringement. Defendant and counterclaim-plaintiff Maquet Cardiovascular LLC owns six patents directed to guidable intravascular blood pumps and related methods. Plaintiff and counterclaim-defendants Abiomed, Inc.; Abiomed R&D, Inc.; and Abiomed Europe GmbH (collectively, "Abiomed") manufacture the "Impella" line of intravascular blood pumps. Abiomed filed this action seeking a declaratory judgment that its Impella products do not infringe Maquet's patents and that they are invalid. Maquet has filed a

counterclaim seeking a declaratory judgment and damages for infringement. The scope of the case has been narrowed to Claims 16 and 17 of Maquet's Patent No. 7,022,100 ("The '100 Patent").

Abiomed has moved for sanctions against Boris Leschinsky, Maquet's expert on infringement and validity, on the ground that his participation in the reexamination of U.S. Patent Number 10,238,783 ("the '783 patent"), which claims priority to U.S. Patent No. 7,022,100 (the "'100 patent"), violated a protective order in this case. It requests that the Court enter an order prohibiting him from participating in the reexamination of the '100 patent, which began at some point before the filing of its motion, awarding Abiomed its costs and attorney's fees relating to the motion, and awarding any other sanctions as the Court deems appropriate.

As an initial matter, it appears that the reexamination of the '100 patent has concluded. On April 5 and 6, 2021, the parties submitted letters to the Court about a separate issue in this case. Maquet attached to its letter an office communication from the reexamination that provides a statement of reasons for patentability and/or confirmation of claims 16 and 17 of the '100 patent. (ECF 968, Ex. A at 1 (noting that "[a] [Reexamination Certificate] will be issued" and that "[t]he Reexamination Certificate will indicate . . . [that] Patent claim[s] [16-17] [are] confirmed"); *see* ECF 969 (characterizing Maquet's letter as "reporting the conclusion" of the reexamination of the '100 patent)). Nevertheless, Abiomed has not withdrawn or otherwise amended its motion for sanctions.

It is unclear whether Abiomed is seeking sanctions for civil contempt or under Rule 37 for violation of a discovery order. The Court will nonetheless interpret the motion as one

seeking contempt sanctions.[1]

A complainant for civil contempt must prove by clear and convincing evidence that (1) the alleged contemnor had notice of the order; (2) the order was clear, definite, and unambiguous; (3) the alleged contemnor had the ability to comply with it; and (4) he or she violated it. *United States v. Saccocia*, 433 F.3d 19, 26 (1st Cir. 2005). The Court "must read any ambiguities or omissions in . . . a court order as redound[ing] to the benefit of the person charged with contempt." *See NBA Props., Inc. v. Gold*, 895 F.2d 30, 32 (1st Cir. 1990) (internal quotation marks omitted). "[E]ven if all of these conditions are satisfied, the trial court retains a certain negative discretion; that is, the court retains the authority to eschew the imposition of a contempt sanction if it deems such eschewal to be in the interests of justice in the particular case." *In re Grand Jury Investigation*, 545 F.3d 21, 25 (1st Cir. 2008).[2]

On February 23, 2017, the Court entered a protective order in this case that had been

---

[1] Abiomed specified the type of relief it seeks, but did not specify the rule or authority entitling it to that relief. Many of the cases it cites involve proceedings for civil contempt. (*See* ECF 960, Mem. at 6 (*citing Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 20 (1st Cir. 2003) (affirming finding of civil contempt for violations of an order); *Eagle Comtronics, Inc. v. Arrow Commc'n Labs, Inc.*, 305 F.3d 1303, 1314 (Fed. Cir. 2002) (finding a party in civil contempt of a protective order and reversing and remanding for an award of appropriate sanctions)). Certain others involved discovery sanctions under Fed. R. Civ. P. 37(b)(2). (*See* Mem. at 6 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (citing to the part of the opinion discussing sanctions under Rule 37(b)(2))).

It is not clear that the Court has the authority to impose sanctions against Leschinsky pursuant to Fed. R. Civ. P. 37(b)(2). That rule applies only to "a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)." *See* Fed. R. Civ. P. 37(b)(2); *see also General Ins. Co. of America v. E. Consol. Utils., Inc.*, 126 F.3d 215, 220 (3d Cir. 1997) ("On its face, [] Rule 37(b)(2) applies only to parties, and we have found no case that has applied Rule 37(b)(2) to a nonparty."); *but see Ceats, Inc. v. TicketNetwork, Inc.*, 2021 WL 3738847, at *2, n.1 (E.D. Tex. Aug. 24, 2021) (applying Rule 37(b)(2) and noting that "[w]hile Ms. McAuliffe and Dr. Billett do not fall within any of the categories listed in Fed. R. Civ. P. 37(b)(2), they have expressly submitted to the Court's jurisdiction, including its authority to issue sanctions, by signing on to the protective order in this case.").

[2] An evidentiary hearing is not always necessary in a proceeding for contempt. *Morales-Feliciano v. Parole Bd. of P.R.*, 887 F.2d 1, 6-7 (1st Cir. 1989) (concluding that an evidentiary hearing was not required where the alleged contemnor had adequate notice and an opportunity to present evidence and arguments in writing, pointed to no disputed factual matters that required an oral proceeding, and did not request a hearing).

drafted and stipulated to by both parties.  (ECF 56, Protective Order).  As relevant here, that order states:

> Absent written consent from the producing party, any *individual* who receives access to a producing party's HIGHLY CONFIDENTIAL INFORMATION shall not be involved in the prosecution of the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"), or patents or patent applications relating to intravascular blood pumps that incorporate or claim any HIGHLY CONFIDENTIAL INFORMATION of the other Party.  For purposes of this paragraph, "prosecution" includes drafting, amending, advising on, or otherwise affecting the scope of patent claims.
>
> To avoid any doubt, these prohibitions are not intended to and shall not preclude *counsel* from participating in any post-grant proceeding before a domestic or foreign agency where the validity of a patent is challenged (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* review), except that any *individual* who receives access to a producing party's "Highly Confidential" material is precluded from drafting or amending claims in a post-grant proceeding.

(*Id.* at 13 (paragraph break added) (emphasis added)).

On February 5, 2018, Leschinsky agreed in writing to be bound by the order.  (ECF 961, Ex. A at 4).  It is undisputed that, since that time, he has received access to Abiomed's highly confidential information.

On November 1, 2019, the PTO initiated reexamination of claims 1-3 of the '783 patent based on its finding that a substantial new question of patentability existed based on certain prior art references.  (ECF 961, Ex. D at 1, 5, 10).  As to claim 1, it noted that that claim "requires that the rotor hub tapers distally" and that "an axis coaxial with and extending through a portion of the guide mechanism extends through a region delimited by the outer cannula surface."  (*Id.* at 10).

On May 18, 2020, Leschinsky apparently participated in an interview with the examiner handling the '783 reexamination.  (ECF 961, Ex. B, May 18, 2020 Examiner Interview

Summary).  During that interview, "[Maquet] asserted that the guide mechanism of [the prior art] is not integrated with the blood pump."  (*Id.* at 4).  On June 25, 2020, Leschinsky submitted a declaration in the matter.  (ECF 961, Ex. C, June 25, 2020 Leschinsky Decl. ¶¶ 8, 31-32).  In that declaration, he attested that "[he] [had] interpreted the claim terms of the '783 patent under both the broadest reasonable interpretation claim construction standard and the *Phillips* standard . . . ."  (*Id.* ¶ 8).  He further attested that "[i]n contrast to the guide mechanism of claim 1, which is an integrated feature of the claimed intravascular blood pump, [the prior art reference] discloses a guide wire and 5F catheter that are separate and distinct components from the cannula and the rest of the Hemopump device.  That is, I attest to the fact that the guide wire and 5F catheter are not integrated with the Hemopump."  (*Id.* ¶ 32).

On October 23, 2020, the examiner terminated the reexamination of the '783 patent.  (ECF 961, Ex. F at 4).  The statement of reasons for the termination noted that "[Maquet's] arguments that the claimed guide mechanism is an integrated feature of the blood pump rather than a separate guide catheter have been considered and are persuasive."  (*Id.* at 5).  It further noted that "the claims are being interpreted as [sic] the 'guide mechanism' is an integrated feature of the intravascular blood pump" and that "the prior art does not teach a guide mechanism that is an integrated part of an intravascular blood pump."  (*Id.*).

The parties agree that Leschinsky did not "draft" or "amend" the claims, and that the language of the claims of the '783 patent did not change.  However, Abiomed contends that Leschinsky "advis[ed] on" or "otherwise affect[ed] the scope of patent claims," which the order specifically distinguishes from "drafting or amending claims."

In addition, it contends that the exception in the second paragraph for post-grant proceedings does not apply to Leschinsky.  Specifically, it reasons that the exception applies

5

only to "counsel" and he is not Maquet's counsel, but rather an expert witness.  (Protective Order at 13 ("[C]ounsel [are not precluded] from participating in any post-grant proceeding[s] . . . where the validity of a patent is challenged[,] including . . . [an] *ex parte* reexamination.")).

Maquet has essentially two responses.  First, it contends that Abiomed's view of the exception ignores the reference to "individuals" later in the sentence— "*counsel* [are not precluded] from participating in any post-grant proceeding[s] . . . where the validity of a patent is challenged[,] (including . . . [an] *ex parte* reexamination) . . . except that any *individual* who receives access to a producing party's 'Highly Confidential' material is precluded from drafting or amending claims in a post-grant proceeding"—which, according to it, makes clear that both the prosecution bar's restrictions *and* exceptions are intended to extend to "any individual who receives access to a producing party's [highly confidential information]."  (*Id.* (emphasis added)); *see, e.g.*, *Crystal Image Tech., Inc. v. Mitsubishi Elec. Corp.*, 2009 WL 1035017, at *3-4 (W.D. Penn. Apr. 17, 2009) (discussing "trial counsel's participation in [] reexamination proceedings" and entering an order with the following language:  "*no attorney or other individual* who has access to [confidential information] . . . shall be involved thereafter, in [] prosecution . . . *excluding a patent in reexamination* initiated by . . . an opposing party [for the patent under review].  For the purposes of reexamination, any *individual*'s participation in *reexamination* proceeding(s) also is expressly conditioned on his/her/its legal obligation . . . not to use . . . [confidential information] . . . to draft new claims, or to amend previously existing claims, through the reexamination process.") (emphasis added); *Mirror Worlds Techs., LLC v. Facebook Inc.*, 2017 WL 5969334, at *2-3 (S.D.N.Y. Nov. 20, 2017) (noting that "there is a risk that []*attorney[s]* will be able to use [confidential] information to . . . restructure strategically the scope of claims to sustain them against a challenge in a post-issuance proceeding"; that

6

"*individuals* who participate in post-issuance reexamination . . . . should [therefore] be subject to the prosecution bar, subject to exclusions"; and that defendant's proposed term—"[t]hose *individuals* who have agreed not to participate in amending claim scope . . . are not subject to this prosecution bar for *inter partes* review or other post-grant proceedings," appropriately "balance[d] the risk") (emphasis added). It contends that the "sole shorthand reference to 'counsel' in the middle of the section does not change that meaning, especially given the rationale underlying the Prosecution Bar and the inconsistent terminology used through[out] it." (ECF 963, Opp. at 10).

Abiomed contends that such an exception would swallow the rule, because anyone would be able to participate in post-grant proceedings, and that "any individual" clearly refers to "individual counsel." Maquet contends that its view is entirely sensible, because it means that the first paragraph is directed to pre-issuance patent proceedings only, and the second paragraph is directed to post-issuance patent proceedings, where the only prohibition is on drafting or amending the claims. It also contends that such a view comports with the case law surrounding the purpose of prosecution bars. *See Voice Domain Techs., LLC v. Apple, Inc.*, 2014 WL 5106413, at *5, *8 (D. Mass. Oct. 8, 2014) ("The Patent Act expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent" and therefore "mitigates the potential misuse of PTO procedures to gain a collateral business or litigation advantage, thereby rendering a prosecution bar in the reexamination context largely unnecessary."); *Kenexa Brassring Inc. v. Taleo Corp.*, 2009 WL 393782, at *2 (D. Del. Feb.18, 2009) ("Because reexamination involves only the patent and the prior art, defendant's confidential information is basically irrelevant to the reexamination.") (internal quotation marks omitted); N.D. Cal. Patent Local Rule 2–2 Interim Model Protective Order ("To

avoid any doubt, 'prosecution' as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination)"); *but see Shared Memory Graphics, LLC v. Apple, Inc.*, 2010 WL 4704420, at *3 (N.D. Cal. Nov. 12, 2010) ("Claims may still be restructured in reexamination, and, in a given case, a patent owner may well choose to restructure claims in a manner informed by the alleged infringer's confidential information gleaned from litigation."); *id.* (concluding that counsel should not be completely banned from participating in reexamination proceedings in light of the burden of seeking different counsel); *Grobler v. Apple Inc.*, 2013 WL 3359274, at *1 (N.D. Cal. May 7, 2013) (prohibiting counsel from drafting or amending claims in reexamination, and noting that "while other courts have rejected any expansion of the prosecution bar to reexamination . . . claims may still be restructured in these proceedings in a way that would undoubtedly benefit from access to . . . proprietary information").[3]

It further contends that the first paragraph does not apply to Leschinsky's actions, because no claim was ever amended as part of the '783 reexamination. Therefore, according to it, "it is at least ambiguous [] whether [] [he] even *could have* advised on or otherwise affected the scope of the claims of the'783 [p]atent under reexamination." (Opp. at 8-9 (emphasis added)).

In the Court's view, it is likely that Leschinsky violated the protective order. Even if he did not "affect" the scope of the claims, he "advised on" their scope by submitting a declaration that suggested how the examiner should construe them. He is not "counsel" to Maquet, and

---

[3] Abiomed notes that such case law is not dispositive here, because it involves disputed protective orders that had not yet been entered in the case, whereas here, the protective order was agreed to and entered. (ECF 965, Reply at 3).

therefore, the exception for post-grant proceedings would not appear to apply to him. And the exception to the exception—"except that any individual who receives access to a producing party's 'Highly Confidential' material is precluded from drafting or amending claims in a post-grant proceeding"—is likely irrelevant, because he does not meet the initial exception it modifies. Therefore, it would appear that he was restricted from being involved in the prosecution of the patents in a post-grant proceeding.

Nevertheless, under the circumstances, the Court cannot say that the order—which, again, the parties themselves drafted for approval by the Court—was clear and unambiguous. *Saccocia*, 433 F.3d at 26. The import of the exception to the prosecution bar in the second paragraph appears to be that the parties balanced the costs of hiring different counsel against the risk of the potential for misuse, and determined that counsel who accessed highly confidential information should not be permitted to draft or amend claims in reexamination proceedings, but should otherwise be able to participate in them. The reference to "individuals" in the exception to that exception creates an ambiguity as to whether the parties wished to extend that exception to persons other than counsel. It is somewhat counterintuitive that counsel with access to highly confidential information would be permitted to participate, while other individuals with the same access would not be (even if the costs of hiring different counsel may be higher than that of hiring different experts, or more of a recurring issue). Several courts that discussed the merits of an exception for *counsel*'s participation in post-grant proceedings have thus imposed orders that were not limited to counsel, but applied to all individuals. *Mirror Worlds*, 2017 WL 5969334, at *2-3; *Crystal Image Tech., Inc.*, 2009 WL 1035017, at *3-4. Against that backdrop, the reference to "individuals" was not unambiguously a reference to "individual counsel," and might create confusion over the earlier use of the term "counsel."

Again, from the Court's perspective, it seems likely that Leschinsky violated the order. Nonetheless, in light of the fact that the order is not clear and unambiguous, the Court cannot say that contempt sanctions are appropriate.

For the foregoing reasons, Abiomed's motion for sanctions is DENIED.

**So Ordered.**

Dated: November 4, 2021

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court