# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

ABIOMED, INC.,

           Plaintiff/Counter-Defendant,

     v.

MAQUET CARDIOVASCULAR LLC,

           Defendant/Third-Party
           Plaintiff/Counter-Defendant/
           Counter-Claimant,

     v.

ABIOMED EUROPE GMBH,

           Third-Party Defendant,

     v.

ABIOMED R&D, INC.,

           Third-Party Defendant/
           Counter-Claimant.

_____

Civil Action No.
16-10914-FDS

## MEMORANDUM AND ORDER ON ABIOMED'S MOTION TO REDACT ORAL ARGUMENT HEARING TRANSCRIPTS

**SAYLOR, C.J.**

      This is an action for patent infringement.  Defendant and counterclaim-plaintiff Maquet

Cardiovascular LLC owns six patents directed to guidable intravascular blood pumps and related

methods.  Plaintiff and counterclaim-defendants Abiomed, Inc.; Abiomed R&D, Inc.; and

Abiomed Europe GmbH (collectively, "Abiomed") manufacture the "Impella" line of

intravascular blood pumps.  Abiomed filed this action seeking a declaratory judgment that its

Impella products do not infringe Maquet's patents and that they are invalid.  Maquet has filed a

counterclaim seeking a declaratory judgment and damages for infringement.

Abiomed has moved to redact in part the transcripts of oral arguments that took place in this case on August 20 and 24, 2020.  The excerpts at issue refer to (1) the amounts that Abiomed paid to Dr. Walid Aboul-Hosn, who now works as a consultant for Abiomed and is the first named inventor of the '100 Patent; (2) the specifics of his role at Abiomed; (3) the proposed royalty awards of each party's damages expert; (4) the revenues of certain Impella products; (5) allegations that there were no non-infringing alternatives at the time of the hypothetical negotiation; and (6) statements of Abiomed's expert, Dr. Lynn Weber, about internal market surveys of the Impella products.  (*See* Reply at 1, n.1).

Documents submitted to this Court that are "relevant to the determination of [] litigants' substantive rights" or for the "purpose of influencing an[] adjudicatory proceeding" are normally subject to the presumption of public access.  *United States v. Kravetz*, 706 F.3d 47, 58, 59 n.9 (1st Cir. 2013).  For "non-discovery motions, like motions for summary judgment, [and] *Daubert* motions," the party seeking to overcome the presumption of public access "must demonstrate significant countervailing interests, like the existence of trade secrets in the documents or confidential business information."  *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 448 (D. Mass. 2015) (citing *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 165 (3d Cir. 1993); *but see In re Midland Nat'l Life Ins. Co. Annuity Sales Pracs. Litig.*, 686 F.3d 1115, 1119-20 (9th Cir. 2012) (reversing a ruling that records were within an exception for sealed discovery documents attached to a *nondispositive* motion, and noting that "[i]n some cases, such as this one, a *Daubert* motion connected to a pending summary judgment motion may be effectively '*dispositive* of a motion for summary judgment'" and therefore the "compelling reasons" standard should have applied (emphasis added)).  Only the most

compelling reasons can overwhelm the presumption.  *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

On February 23, 2017, the Court entered a protective order in this case that had been stipulated to by both parties.  (ECF 56).  As relevant here, the order states:  "[a]ll documents of any nature, including briefs, which have been designated either as CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION, and which are filed with this court, shall be filed under seal . . . ."  (*Id.* § 5(a)).  Abiomed contends that the items in question all contain information from materials that it designated as "confidential" or "highly confidential" during discovery.  (Mot. ¶¶ 3-4).  It also contends that, at least as to the August 24 hearing, the parties agreed that confidential material would be redacted:

> Mr. Hummel:  Yes.  Your Honor, just one other housekeeping matter, which I discussed with counsel for Maquet.  There's a lot of highly confidential information that's covered in these particular motions.  The parties have excised for the most part the most highly confidential information from their slides, and there's the more softer information that's been technically marked confidential, highly confidential or confidential, but the parties will, if they see something on each other's slides, raise their hand if there's a problem, otherwise, we don't see any problem with presenting to your Honor, you know, what's on these slides and redacting them to the extent they get filed, if that's acceptable to your Honor.
>
> The Court:  Yes, that's fine.

(ECF 943, Aug. 24, 2020 Tr. at 4:24-5:12).

The Court and the parties have an interest in efficient discovery, and that interest is furthered by respecting protective orders entered into by joint agreement among the parties.  *See Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) (noting that "the lubricating effects of the protective order on pre-trial discovery would be lost if the order expired at the end of the case or were subject to ready alteration" and finding that "[n]othing . . . suggests that the district court abused its discretion in refusing to lift the protective order for discovery materials not introduced at trial").  However, this case is no longer in the discovery phase of litigation, and

3

therefore, the parties' interests in confidentiality must be balanced against the public's right to access. *See Mosaid Techs. Inc. v. LSI Corp.*, 878 F. Supp. 2d 503, 509-10 (D. Del. 2012) (rejecting the parties' position "that any mention of a document that has been designated as 'Confidential' . . . under the Protective Order is sufficient to close the otherwise public proceedings of oral argument"); *In re Petrobras Secs. Litig.*, 393 F. Supp. 3d 376, 387 (S.D.N.Y. 2019) (finding that "most of the materials covered by the July 2016 [protective] order c[ould] now be unsealed[] [s]ince the documents related to this Court's ruling on summary judgment"); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680 n.15 (3d Cir. 1988) (explaining that a party's "assumption that the PO properly may be read to govern the treatment of confidential [] documents that were admitted into evidence" may be "factually and legally flawed" because, among other reasons, "BIC would have this court hold that a stipulated protective order gave [it] the unilateral power to designate which of its documents would be[] a part of the public record").

As a preliminary matter, Maquet contends that Abiomed never requested that the hearing be sealed, even though the Court e-mailed videoconference access instructions to each party for them to convey to anyone who would like to join.  (ECF 947, Perrin Decl. ¶ 8).  One of Maquet's representatives attended the hearings, and it thus contends that the motion should be denied because "[c]ourts routinely deny motions to seal or redact information already disclosed in open court."  (Opp. at 10, n.5 (citing *Smith v. U.S. Dist. Court for S. Dist. of Ill.*, 956 F.2d 647, 650 (7th Cir 1992) ("Perhaps they made only a half-hearted attempt at the confidentiality argument because the memorandum was read from in open court—any privilege would have been waived when the gist of the document was made public."); *Littlejohn*, 851 F.2d at 680 ("The court properly found BIC waived whatever rights to confidentiality that might have been created by the [protective order] . . . [by] fail[ing] to raise the issue of confidentiality."); *Nat'l Polymer*

*Prods. v. Borg-Warner Corp.*, 641 F.2d 418, 421 (6th Cir. 1981) (finding that "the release of information in open trial is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use"))).  However, the hearing at issue was conducted by videoconference due to the COVID-19 pandemic, and it may be the case that Abiomed did not realize that anyone other than the parties' attorneys were on the conference.  It also made an effort to seal the information in question shortly after the transcripts were released, and raised the issue of confidentiality during the August 24 hearing.  Under the circumstances, the motion will not be denied on the basis that the matters were discussed in open court.

After careful consideration, the Court finds that the portions of the transcript that refer to confidential financial information—which includes the amounts that Abiomed pays to Dr. Aboul-Hosn, and revenues for certain Impella products—outweigh the presumption of access.  *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 586-87 (N.D. Cal. 2020) (finding compelling reasons to seal financial figures and undisclosed marketing plans); *Baird v. BlackRock Inst'l Trust Co., N.A.*, 403 F. Supp. 3d 765, 792 (N.D. Cal. 2019) ("[T]he information contains 'confidential business and financial information relating to the operations of BlackRock,' constituting a sufficiently compelling reason to seal." (quoting a previous order in the case)); *cf. Williams v. U.S. Bank Nat'l Ass'n*, 290 F.R.D. 600, 608 (E.D. Cal. 2013) (denying a motion to seal and noting that "nowhere in the deposition transcript is the amount of the salary disclosed, nor the amount of any incentive, nor the amount of any bonus").  Abiomed's Chief Intellectual Property Counsel attested that "[Abiomed] does not [] make public revenues by specific product type or by specific geographic area in which a specific product is sold, other than the total revenues of what is sold in the U.S. and what is sold outside the U.S."  (ECF 955,

Akopyan Decl. ¶ 3).  She further attested that the damages experts in this case "derived from

such . . . information the following figures:  (1) the applicable revenue base . . . , (2) the royalty

rates used for calculating potential damages, and (3) the potential damages figures."  (*Id.* ¶ 5).

The applicable revenue base is thus clearly confidential financial information, at least at this

stage, and statements as to it will be redacted.  In addition, because the transcript reflects

attorney walk-throughs of the experts' methodologies in reaching their proposed royalty rates,

the revenue figures could also be ascertained if the royalty rates and potential damages figures

were not redacted.  (*See, e.g.*, Aug. 24, 2020 Tr. at 6:8-9, 29:23-30:2).  Accordingly, the motion

will be granted as to those portions of the transcript involving those three items.

       Maquet does not contest the redaction of lines 51:18-53:12 from the August 20 transcript,

which, among other things, contain a description of Dr. Aboul-Hosn's role at Abiomed.  (Opp. at

3, n.3, 12; ECF 942, Aug. 20, 2020 Tr. at 51:18-53:12).  The motion will be granted as to that

part of the transcript.  In addition, Abiomed moved to redact lines 15-17 on page 51 of the same

transcript.  Those lines contain identical information to the information in the lines Maquet does

not contest—that is, information about Dr. Aboul-Hosn's role at Abiomed.  Accordingly, the

motion to redact will also be granted as to such lines.

       It is less clear whether parts of the transcript referring to allegations that there were no

non-infringing alternatives at the time of the hypothetical negotiation, and to Dr. Weber's

statements about internal market surveys of the Impella products, should be redacted.  (Reply at

2 (describing other redactions for "Abiomed's internal market demand surveys")).  The

transcripts read as follows as to such items:

- "And their 30(b)(6) witness admitted there were no other alternative --
  there was no other alternative ready to be launched at the time that would
  replace the Impella 2.5. That's what their 30(b)(6) witness said, that there
  was no non-infringing alternative at the relevant time. Abiomed should not

be allowed to add new . . . ."  (Aug. 20, 2020 Tr. at 88:5-10).

- "It's remarkable.  I've looked through these surveys, and they have nothing to do with cardiologists' preferences.  Most of them talk about Impella pricing, how is Abiomed going to say price the Impella, and different marketing methods to discuss with physicians."  (Aug. 24, 2020 Tr. at 93:23-94:2).

- "You have testimony where Dr. Weber says, you know, this July 2008 survey talked about what physicians were looking at for demand, they wanted to see more clinical data.  You can look at the survey itself.  The primary objective is to 'understand user's perceptions, assess physicians' desire to routinely use the product.'  What's the basis for that?  Those are the . . . ."  (*Id.* at 104:12-18 (paragraph break omitted)).

- "Dr. Weber's attribute chart in these surveys.  'The most appealing profile terms are increased flow and standard catheterization.'  That shows what the physicians are . . . ."  (*Id.* at 104:22-24).

Abiomed notes that Maquet previously redacted the exact same content from its briefs and slides, but does not otherwise provide a reason that such items are confidential or sensitive and should be redacted.  Therefore, under the circumstances, Abiomed has not provided a sufficient reason to override the presumption of public access.  Accordingly, the motion will be denied as to those parts of the transcripts.

For the foregoing reasons, the motion to redact is DENIED as to lines 88:5-10 of the August 20, 2020 hearing transcript and lines 93:23-94:2, 104:12-18, 104:22-24 of the August 24, 2020 hearing transcript, and GRANTED as to all other items.[1]

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV

Dated:  November 5, 2021                      Chief Judge, United States District Court

---

[1] The redactions that the Court is granting are set forth in Appendix A, which the Court will file separately under seal.