UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABIOMED, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | Civil Action No. |
| v. ) | 16-10914-FDS |
| ) | |
| MAQUET CARDIOVASCULAR LLC, ) | |
| ) | |
| Defendant/Third-Party ) | |
| Plaintiff/Counter-Defendant/ ) | |
| Counter-Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| ABIOMED EUROPE GMBH, ) | |
| ) | |
| Third-Party Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| ABIOMED R&D, INC., ) | |
| ) | |
| Third-Party Defendant/ ) | |
| Counter-Claimant. ) | |

**ORDER ON MAQUET'S MOTION FOR RECONSIDERATION OF ORDER ON
ABIOMED'S MOTION FOR SUMMARY JUDGMENT**

**SAYLOR, C.J.**

This is an action for patent infringement. Defendant and counterclaim-plaintiff Maquet Cardiovascular LLC owns six patents directed to guidable intravascular blood pumps and related methods. Plaintiff and counterclaim-defendants Abiomed, Inc.; Abiomed R&D, Inc.; and Abiomed Europe GmbH (collectively, "Abiomed") filed this action seeking a declaratory judgment that it does not infringe those patents and that they are invalid.

On September 30, 2021, the Court granted Abiomed's motion for summary judgment on the ground that no reasonable juror could conclude that the accused devices infringe Maquet's '100 patent. Specifically, the Court granted summary judgment because the accused devices do not incorporate a guide mechanism that mirrors Maquet's patented "side-rigger" structure—which the Court construed in its *Markman* order as "a guide wire passing slideably through a lumen extending through a guide carriage integrally formed along at least a portion of the cannula sidewall." The guide carriage in the accused devices is attached to a threaded nub located on the distal end of an inlet cage, which is connected to the cannula. The guidewire passes coaxially through the entire device, emerging at the terminal end of the "pigtail" guide carriage. At no point is the guide carriage along the cannula sidewall. Because the guidewire and lumen are always at the center of the device, the Court determined that, as a matter of law, the accused devices do not infringe Maquet's "side-rigger" structure.

At summary judgment, Maquet contended that the connection between the cannula and guide carriage is a "tapered fit." Therefore, according to Maquet, the small overlap between the two at the point of connection renders the guide carriage "integrally formed along at least a portion of the cannula sidewall." The Court pointed out three principal problems with that argument. First, Maquet submitted no evidence of a tapered fit between the cannula and the guide carriage. Second, the guide carriage is attached not to the cannula sidewall but rather to a threaded nub located on the distal end of the inlet cage. The cannula sidewall (assuming that the inlet cage is part of the cannula) terminates below the threaded nub. As a result, no part of the guide mechanism overlaps the sidewall. Finally, the accused devices do not fit a common-sense reading of the claim language. To construe an entirely distal and circumferential attachment to the cannula as being integrally formed along the cannula sidewall would render the claim

language meaningless. Under that interpretation, any guide carriage and lumen would infringe, regardless of where they are located in relation to the cannula.

After determining that the undisputed record evidence failed to support an argument of literal infringement, the Court then held that Maquet's contentions concerning equivalence were inadequate. Although Maquet asserted equivalence in general terms, it never specified facts or presented a coherent theory as to how the accused devices are equivalents to its patented product. The Court therefore granted Abiomed's motion for summary judgment.

Maquet has moved for reconsideration of that order under Fed. R. Civ. P. 59(e). A motion for reconsideration will be granted only upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81–82 (1st Cir. 2008).

Maquet contends that the Court committed an error of apprehension by overlooking (1) evidence of infringement under 35 U.S.C. § 112 ¶ 6 and the doctrine of equivalents; (2) evidence demonstrating that the threaded nub was part of the cannula sidewall; and (3) expert testimony concerning the "rapid exchange" guide mechanism.

As evidence that the accused devices' pigtail guide carriage is equivalent to the claimed guide mechanism under § 112 ¶ 6 and the doctrine of equivalents, Maquet points to the report of its expert, Boris Leschinsky. As relevant here, Leschinsky opined that the pigtails of the accused products are integrally formed along the "threaded sidewall of the distal-most portion of the devices." (Leschinsky Report ¶ 75).[1] That opinion of literal infringement is then backstopped by

---

[1] Leschinsky made similar claims concerning nearly every component part of the accused devices. However, the Court assumed many of Maquet's contentions for the purposes of summary judgment: For example, the Court assumed that the inlet cage is part of the cannula and that a guide carriage permanently glued or affixed to a structure satisfies the "integrally formed" requirement of the claim construction language. (Mem. & Order on Summ. J. at 32, 34; ECF No. 972). Summary judgment was granted on the basis that the guide carriages of the accused devices are not integrally formed *along* the cannula sidewall. Thus, the Court will limit its discussion of Leschinsky's opinion on equivalence to that specific issue.

an opinion that the pigtail guide carriages of the accused devices are equivalents under both § 112 ¶ 6 and the doctrine of equivalents.  (*Id.* ¶¶ 76-79, 85).

According to Maquet, Leschinsky's report applies the relevant facts to the "function, way, result" test under the doctrine of equivalents.  *See Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009) (stating that establishing infringement under doctrine of equivalents requires a showing "that the accused product performs substantially the same *function* in substantially the same *way* with substantially the same *result* as each claim limitation of the patented product.") (emphasis added).  In its summary judgment order, the Court determined that it is undisputed that the accused devices perform an identical function to the "guide mechanism" of the patent.[2]  Thus, Maquet was required to identify a disputed issue of material fact as to whether the accused devices perform that function in substantially the same way.[3]  The germane part of Leschinsky's report reads:  "[B]oth guide mechanisms perform the same function. Both guide mechanisms do this the same way, by employing a guide wire passing slideably through a lumen extending through a guide carriage integrally formed along at least a portion of the cannula sidewall."  (Leschinsky Report ¶ 79).

To survive summary judgment, the patentee must provide particularized evidence demonstrating that the accused products are equivalent and a linking argument applying that evidence to the law.  *See AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007) (stating that plaintiff was required to "provide particularized testimony and

---

[2] Abiomed contends that it disputes this issue but whether the issue is disputed is not material to this motion for reconsideration.  (Opp'n to Mot. for Recons. at 7 n.2; ECF No. 979).

[3] As it did at summary judgment, Maquet contends that the accused devices infringe under both § 112 ¶ 6 and the doctrine of equivalents.  However, it does not set forth distinct arguments for each theory.  Under the circumstances, that does not impede the Court's analysis, for the legal standard appropriate for evaluating infringement under § 112 ¶ 6 is known as the "way, result" test and is largely identical to that used for the doctrine of equivalents—except that functional identity is required for literal infringement, thereby obviating the "function" prong of the analysis.  *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).  Because Maquet's arguments falter at the "way" prong of both analyses, a distinction between the two is not necessary here.

linking argument on a limitation-by-limitation basis that created a genuine issue of material fact as to equivalents."). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Id.* at 1328 (quoting *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996)); *see also Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1365 (Fed. Cir. 2007) (stating that expert declarations that fail to describe how the accused devices operate and how they are substantially similar to the patented claims are not sufficient to withstand summary judgment). Here, Leschinsky's report neglects to explain how Abiomed's coaxial design operates in the same manner as the side-rigger structure of the claim. Instead, the report recites the claim-construction language. That is a repackaged argument for literal infringement, not an explanation concerning equivalence. Expert evidence that the accused devices are equivalents requires an acknowledgment of the differences between the accused and patented products, followed by an explanation for how the accused design is nonetheless infringing. Maquet provided no such evidence.

      Maquet also asserts that the Court overlooked or misapprehended evidence that the threaded nub is part of the cannula. That misconstrues the Court's ruling. The ruling was not premised on the notion that the threaded nub is distinct from the cannula. Rather, the Court found that the threaded nub is situated on the distal end of the cannula and that the cannula sidewall terminates proximate to the threaded nub. The facts that Maquet contends the Court misapprehended were construed in Maquet's favor. The Court assumed that the cannula consists of the inlet cage and that the threaded nub is attached to the inlet cage and, therefore, the cannula. However, the evidence showed that the threaded nub—and the pigtail guide carriage attached to it—are distal to the cannula and in no way integrally formed along the sidewall.

In opposition to that ruling, Maquet points again to the Leschinsky report as evidence that the pigtail guide carriage is integrally formed along the cannula sidewall. But Leschinsky himself describes the threaded nub as lying at the distal end of the cannula. (Leschinsky Report ¶ 63). And he cites to record evidence from Abiomed stating that the pigtail guide carriage is attached to the cannula. (*See id.* ¶¶ 67-68, 71). The claim language, though, does not merely require that the guide carriage be attached to the cannula; it requires that the guide carriage be formed *along* the cannula sidewall. An entirely distal connection to the cannula cannot infringe because it could not be accurately described as along the sidewall.

Elsewhere in the report, Leschinsky describes the pigtail guide carriage as being integrally formed along the cannula sidewall. (*Id.* ¶¶ 64-65, 73). However, such a cursory conclusion fails to raise a genuine issue of material fact that precludes summary judgment. "A genuine issue is shown to exist if sufficient evidence is presented such that a reasonable fact finder could decide the question in favor of the nonmoving party." *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed. Cir. 1997). Here, Leschinsky's assertion that the distal connection between the cannula and the guide carriage is along the sidewall could not be accepted by a reasonable factfinder. Such a conclusion would, for reasons discussed in the Court's summary judgment order, render the claim language meaningless. To consider the cannula's distal end to be the cannula sidewall would encompass within the claim language any conceivable attachment, no matter its orientation to the cannula.

The unduly broad interpretation of the claim language in Leschinsky's report evinces Maquet's true disagreement with the Court. Essentially, Maquet premises its arguments not on the assumption that the Court overlooked evidence, but rather that it misconstrued the claim language. There are no contested facts relevant to whether the guide carriage is integrally

6

formed along the cannula sidewall.  Both parties agree that the threaded nub lies on the distal end of the inlet cage and that the guide carriage is affixed to that threaded nub.  The dispute, therefore, lies not in the physical characteristics of the accused devices but in the application of the claim language to those physical characteristics.  Under such circumstances, "the question of literal infringement collapses into claim construction and is amenable to summary judgment." *General Mills, Inc.*, 103 F.3d at 983.  Maquet disagrees with the Court's interpretation of the claim requirement that the guide carriage be "integrally formed along at least a portion of the cannula sidewall."  But that disagreement, bolstered by an expert opinion stretching the claim language beyond any plausible meaning, is not a proper basis for reconsidering summary judgment.  For the reasons discussed in the Court's order, the accused devices do not meet the structural limitations of the claims.

Finally, Maquet contends that any expert testimony asserting that the accused devices meet the claim limitation, as understood by a person of ordinary skill in the art, creates a genuine issue of material fact.  Specifically, Maquet cites parts of Leschinsky's report and inventor testimony that argue that the accused devices employ a "rapid-exchange guide mechanism" and therefore infringe the '100 patent.[4]  But the Court already addressed the terms "side-rigger" and "rapid exchange" mechanism by constructing those terms in its claim construction order.  The fact that Maquet's experts construe those terms differently is of no account.  Claim construction

---

[4] Maquet offers two other tangential arguments that can be disposed of quickly.  The first is that Leschinsky, as a person of ordinary skill in the art, concluded that the accused devices meet the "guide mechanism" limitation.  That essentially repeats Maquet's argument for infringement under the doctrine of equivalents and fails for the same reason.  Expert testimony must offer more than self-serving and conclusory statements to raise a genuine issue of material fact.  The second argument is that the Court ignored testimony confirming that a lumen central to and coaxial with the cannula meets the claim limitation.  However, Maquet fails to point to any expert testimony stating as such, except for the testimony describing the accused devices as employing "rapid-exchange guide mechanisms," which is discussed below.  Maquet attempts to frame this argument as the Court reading a new side-lumen limitation into the claim-construction language.  That is not the case; the Court applied the claim language in a manner consonant with its *Markman* order.  Nevertheless, it defies logic how a lumen extending through a guide carriage integrally formed along the cannula sidewall could be anything but a side lumen.

is a matter of law.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("We hold that the construction of a patent, including terms of art within its claim, is exclusively within the province of the court.").  Maquet cannot circumvent the Court's *Markman* order by pointing to expert testimony that interprets the claims differently.  If such testimony indeed forecloses the possibility of summary judgment, it is impossible to envision any situation where a party would be prevented from relitigating claim construction and evading summary judgment by marshalling expert testimony, no matter how implausible such testimony might be.  That cannot be the law.

For the foregoing reasons, Maquet's motion for reconsideration is DENIED.

**So Ordered.**

Dated:  November 30, 2021

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Chief Judge, United States District Court